**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In Re:<br><br>Kristin M. Allard,<br>Debtor | BK NO.: 18-10820<br>Chapter 7<br><br>**COMPLAINT SEEKING EXCEPTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C § 523(a)(2)(B); 11 U.S.C. § 523(a)(4) AND 11 U.S.C. § 523(a)(6)** |
| Shamrock Finance LLC,<br>Plaintiff<br><br>v.<br><br>Kristin M. Allard,<br>Defendant | Adversary Proceeding<br><br>No. ________________ |

NOW COMES Shamrock Finance LLC ("Shamrock"), a creditor in the above captioned matter and files this Complaint seeking the exception of its claim to the discharge of defendant/debtor Kristin M. Allard ("Defendant") pursuant to *11 U.S.C. § 523(a)(2)(A), § 11 U.S.C. (a)(2)(B)*, *§ 523(a)(4)* and *§ 523(a)(6)*. Shamrock seeks exception to Defendant's discharge as it pertains to the debt which is currently due and owing to Shamrock. In support thereof, Shamrock states the following:

**PARTIES**

1. Shamrock is a limited liability company organized pursuant to the laws of the Commonwealth of Massachusetts with its principal office located at 116 Topsfield Road, Wenham, Essex County, Massachusetts 01984;
2. Defendant is an individual with a residence of 11 Dexter Street, Providence, Rhode Island 02909.

**JURISIDICTION**

3. This court has jurisdiction over the subject matter of bankruptcy proceedings pursuant to *28 U.S.C. § 1334* and *28 U.S.C. 157(a)*;

4. This is a core proceeding pursuant to *28 U.S.C. 157(b)* because the cause of action arises under Title 11 of the United States Code. Shamrock hereby consents to this Court's jurisdiction and authority.

**FACTS COMMON TO ALL COUNTS**

5. Shamrock is in the business of providing floor plan financing to motor vehicle dealers for the acquisition of their inventory of motor vehicles;

6. Defendant was in the business of acquiring and selling various motor vehicles under the Massachusetts corporation named J&K Acqusitions and Holdings, Inc. (the "Dealer");

7. Upon information and belief, Defendant was an officer and director of the Dealer and directed the business dealings of the Dealer;

8. On or around September 1, 2016, J&K Acquisitions and Holdings, Inc. ("J&K") executed a Floorplan Note and a Loan and Security Agreement (collectively the "Floorplan Agreement") pursuant to which Shamrock provided financing services to the Dealer and obligated the Dealer to pay Shamrock for such services plus interest at the contract rate and costs including attorneys' fees. (See, the Floorplan Agreement attached hereto as Exhibit "A");

9. On or around September 1, 2016, Defendant signed an Unlimited Guaranty (the "Guaranty") whereunder Defendant personally guaranteed the Dealer's payment

obligations to Shamrock under the Floorplan Agreement. (See, Guaranty attached hereto as Exhibit "B");

10. On August 17, 2016, Shamrock filed its UCC-1 Financing Statement with the Secretary of the Commonwealth of Massachusetts thereby perfecting its security interest granted from the Defendant and the Dealer in all assets, including without limitation inventory and proceeds thereof (See, UCC-1 attached hereto as Exhibit "C");

11. The Floorplan Agreement provided the Dealer with a commercial line of credit with advances in the principal sum of Two Hundred Thousand ($200,000) Dollars or such other amount as may be the aggregate unpaid principal sum of advances made under the Floorplan Agreement;

12. In its usual course of business, Shamrock holds the Certificates of Title of the motor vehicles which it has financed for the Dealer and the Defendant and which are being held as collateral for financing provided;

13. The Dealer is to provide payment to Shamrock in order to obtain the title necessary to complete sale of the collateral (i.e. the particular motor vehicle);

14. The sale of the collateral/motor vehicle without payment of the secured debt to Shamrock at the time of the sale is considered a sale "out of trust";

15. Defendant has sold numerous vehicles on Shamrock's floor plan without making required payments to Shamrock, hence "out of trust", and Shamrock has been unable to locate a significant amount of those vehicles. (See, Floorplan Accounting Sheet attached hereto as Exhibit "D");

16. In many instances Defendant and Dealer obtained titles to motor vehicles held as

collateral by Shamrock by falsely and fraudulently promising to Shamrock that in exchange for possession of the titles, Defendant would cause Dealer to immediately remit to Shamrock the proceeds from the sale of each vehicle which he failed to do;

17. In all other instances, Shamrock is and has never been able to locate numerous motor vehicles which were either sold, removed from Dealer's premises or both, by Defendant and Dealer which titles are being held as collateral by Shamrock and Shamrock remains in possession of said titles;

18. On or about September 29, 2016, the Dealer breached its obligation to Shamrock pursuant to Section 7.1(a) of the Loan and Security Agreement by failing to make a payment of principal to Shamrock and such non-payment was not cured within three (3) days of the failure to pay as required and is accordingly in default pursuant to the terms thereunder;

19. In or about November of 2016, Shamrock exercised its rights as a secured creditor of the Dealer by repossessing its entire inventory pursuant to Article 9 of the Uniform Commercial Code and the Floorplan Agreement;

20. In or about December of 2016, Defendant cooperated with Shamrock in its efforts to foreclose on its perfected security interest in an effort to mitigate her personal liability to Shamrock under the Guaranty as a result of Dealer's default on the Floorplan Agreement;

21. On January 9, 2017, Defendant transferred her ownership interest in the real property known and numbered as 11 Hudson Street, Providence, Rhode Island (the "Property") to her aunt, Theresa Primo ("Primo"), for the nominal consideration of One ($1.00) Dollar. (See, Quitclaim Deed attached hereto as Exhibit "E");

22. At the time of the transfer, Defendant knew that she was indebted to Shamrock.

23. As of the date hereof, Defendant owes no less than the sum of One Hundred Forty Thousand Nine Hundred Ten and 50/100 ($140,910.50) Dollars plus unpaid interest accrued thereon at the contract rate and costs including attorneys' fees owed pursuant to the terms of the Floorplan Agreement and the Guaranty (See, Exhibit "D");

**COUNT I**
**Exception to Discharge**
**11 U.S.C. § 523(a)(2)(A)**

24. Shamrock hereby incorporates and realleges the allegations contained in Paragraphs 1 through 23 above, as if fully set forth herein;

25. Upon information and belief, Defendant personally acted on behalf of the Dealer and directed Dealer's dealings with Shamrock including without limitation the improper disposition of Shamrock's collateral;

26. Defendant obtained and benefitted from floorplan financing services from Shamrock pursuant to the terms of the Floorplan Agreement and Guaranty;

27. Defendant obtained such financing services from Shamrock by actual fraud within the meaning of *11 U.S.C. § 523(a)(2)(A)*;

28. That Defendant's transfer to Primo of the Property on January 9, 2017 for nominal consideration is a violation of the Uniform Fraudulent Transfer Act (*See, RI ST* § *6-16-1 et seq.*)

29. On or about September 29, 2016, the Dealer breached its obligation to Shamrock pursuant to Section 7.1(a) of the Loan and Security Agreement by failing to make a payment of principal to Shamrock and such non-payment was not cured within three (3) days of the failure to pay as required and is accordingly in default pursuant to the terms thereunder;

30. In or about November of 2016, Shamrock exercised its rights as a secured creditor of the Dealer by repossessing its entire inventory pursuant to Article 9 of the Uniform Commercial Code and the Floorplan Agreement;

31. In or about December of 2016, Defendant cooperated with Shamrock in its efforts to foreclose on its perfected security interest in an effort to mitigate her personal liability to Shamrock under the Guaranty as a result of Dealer's default on the Floorplan Agreement;

32. Shortly after cooperating with Shamrock, Defendant transferred her ownership interest in the "Property to Primo for the nominal consideration of One ($1.00) Dollar. (See, Exhibit "D");

33. Defendant engaged in the fraudulent act in furtherance of a fraudulent scheme to transfer her assets to Primo, specifically the Property, and out of the reach of Shamrock as a creditor of the Defendant.

34. The Defendant's transfer was made about two (2) months after Shamrock foreclosed on the Dealer's business and effectively put it out of business and about one (1) month after she cooperated with Shamrock to mitigate her personal liability caused therefrom.

35. Upon information and belief, Defendant's transfer of the Property to Primo rendered her insolvent.

36. As a direct cause of Defendant's actual fraud, Shamrock has been damaged and suffered financial loss in a sum of no less than One Hundred Forty Thousand Nine Hundred Ten and 50/100 ($140,910.50) Dollars plus unpaid interest that has accrued thereon from the time of default and costs including reasonable attorneys' fees.

37. Based upon the foregoing, Shamrock's claim should be excepted from discharge under *11 U.S.C. § 523(a)(2(A);*

**COUNT II**
**Exception to Discharge**
**11 U.S.C. § 523(a)(2)(B)**

38. Shamrock hereby incorporates and realleges the allegations contained in Paragraphs 1 through 37 above, as if fully set forth herein;

39. Upon information and belief, Defendant personally acted on behalf of the Dealer and directed Dealer's dealings with Shamrock including without limitation the improper disposition of Shamrock's collateral;

40. Defendant obtained and benefitted from floorplan financing services from Shamrock pursuant to the terms of the Floorplan Agreement and Guaranty;

41. Defendant misrepresented to Shamrock Dealer's intent to sell the vehicles on floor plan without repaying Shamrock the principal or interest accrued thereon as required pursuant to terms of the Floorplan Agreement which misrepresentation was false when made and upon which Shamrock reasonably relied;

42. The Floorplan Agreement constitute statements in writing representing Dealer's financial condition as he agreed to comply in strict accordance with the terms of the

Floorplan Agreement within the meaning of *11 U.S.C. § 523(a)(2)(B)*. (See, Exhibit "A");

43. Based upon the foregoing, Shamrock's claim should be excepted from discharge under *11 U.S.C. § 523(a)(2(B);*

**COUNT III**
**Exception to Discharge**
**11 U.S.C. § 523(a)(4)**

44. Shamrock hereby incorporates and realleges the allegations contained in Paragraphs 1 through 43 above, as if fully set forth herein;

45. Defendant's financial benefit has been obtained through acts of embezzlement and larceny which expressly exempts claims subject to such from discharge under *11 U.S.C. § 523(a)(4)*;

46. Defendant caused Dealer's breach of the Floorplan Agreement with Shamrock by committing acts of fraud, embezzlement and larceny as she intentionally obtained titles to vehicles through false promises to pay for each one as sold and also by failing to make payments pursuant to the terms of the Floorplan Agreement while continuing to sell vehicles without titles still being held by Shamrock which resulted in over One Hundred Forty Thousand Nine Hundred Ten and 50/100 ($140,910.50) Dollars in principal and unpaid interest to accrue over time;

47. Defendant's intent to deceive was intentional and in violation of *§ 523(a)(4)* for fraud, embezzlement and/or larceny;

48. Based upon the foregoing, Shamrock's claim should be excepted from discharge under *11 U.S.C. § 523(a)(4).*

**COUNT IV**
**Exception to Discharge**
**11 U.S.C. § 523(a)(6)**

49. Shamrock hereby incorporates and realleges the allegations contained in Paragraphs 1 through 48 above, as if fully set forth herein;

50. Defendant's debt currently owed to Shamrock is excepted from discharge pursuant to *11 U.S.C. § 523(a)(6)*;

51. *11 U.S.C. § 523(a)(6)* provides from an exception from discharge for willful and malicious injury by the debtor to another entity or to the property of another entity;

52. Defendant's conduct of failing to abide by the payment terms pursuant to the Floorplan Agreement, her fraudulent transfer of the Property to Primo with actual intent to hinder, delay and defraud her creditor, Shamrock, by obtaining titles by false pretenses, and knowingly selling vehicles without title which she knew to be in the possession of Shamrock clearly demonstrates Defendant's acts as with willful and malicious intent to injure Shamrock within the purpose of this section of the statute;

53. Based upon the foregoing, Shamrock's claim should be excepted from discharge under *11 U.S.C. § 523(a)(6).*

WHEREFORE, Shamrock respectfully requests;

1. That this Honorable Court grant Count I of this Complaint and except Shamrock's claim against Defendant Kristin M. Allard from discharge;

2. That this Court grant Count II of this Complaint and except Shamrock's claim against Defendant Kristin M. Allard from discharge;

3. That this Court grant Count III of this Complaint and except Shamrock's claim against Defendant Kristin M. Allard from discharge;

4. That this Court grant Count IV of this Complaint and except Shamrock's claim against Defendant Kristin M. Allard from discharge; and

5. Such further relief as this Court deems just and proper.

Respectfully Submitted,
**SHAMROCK FINANCE LLC**
By its attorneys,

/s/ *James J. McNulty*
James J. McNulty, Esq.
40 Court Street, Suite 1150
Boston, MA 02108
Tel No. 617-263-3300
jjm@jjmcnultylaw.com

/s/
Marc D. Wallick, Esq.
WALLICK & ASSOCIATES, LTD.
51 Jefferson Boulevard, 1st Floor
Warwick, RI 02888
Tel. No. (401) 461-0100
wallicklaw@aol.com

Dated: February 25, 2019

# **Exhibit A**

**FLOORPLAN NOTE**

**Demand**

September 1, 2016

$200,000.00                                                    Boston, Massachusetts

On Sixty (60) Days Demand prior to an event of default, and immediately On Demand after an event of default, for value received, the undersigned J&K Acquisitions And Holdings INC, a Massachusetts Corporation with its principal office located at 1405 GAR Highway Swansea Ma 02777. (hereinafter collectively referred to as the "Borrower"), promises to pay to the order of Shamrock Finance LLC, a limited liability company organized under the laws of Massachusetts with an address of 116 Topsfield Road, Wenham, Massachusetts 01984 (together with its successors and assigns, "Shamrock"), the principal amount of

Two Hundred Thousand Dollars and 00/100 Cents ($200,000.00)

or such other amount as may be the aggregate unpaid principal amount of all Floorplan Advances made by Shamrock to the Borrower pursuant to that certain Loan and Security Agreement between Shamrock and Borrower dated as of the date hereof (as amended, restated, replaced, or modified from time to time, the "Loan Agreement"), together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. Until paid in full, the aggregate principal balance outstanding shall bear interest at a per annum rate equal to thirty six (36%) percent. All accrued and unpaid interest shall be payable weekly in arrears on the first (1st) Friday of each week, commencing on the first Friday of each week following the date hereof. Capitalized terms used herein without definition shall have the meanings assigned to such terms in the Loan Agreement.

Principal and interest shall be payable at Shamrock's main office in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated on the basis of actual number of days elapsed in a 360-day year. This Note is the Floorplan Note made under the Loan Agreement and is subject to the terms thereof.

At the option of Shamrock, this Note shall become immediately due and payable without notice or demand upon the failure of Borrower to make any payment hereunder when due or the occurrence of any (other) Event of Default under the Loan Agreement.

Any payments received by Shamrock on account of this Note shall be applied first, to any costs, expenses or charges then owed to the Shamrock by the Borrower; second, to accrued and unpaid interest; and third, to the unpaid principal balance hereof. Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as the Shamrock may determine. The Borrower hereby authorizes the Shamrock to charge any deposit account that the Borrower may maintain with Shamrock for any payment required hereunder without prior notice to the Borrower.

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

The Borrower represents to Shamrock that the proceeds of this Note will not be used for personal, family, agricultural or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

The Borrower and each endorser and guarantor hereof grant to Shamrock a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from Shamrock (or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between Shamrock and the Borrower, or any third party acting on Shamrock's behalf (collectively, the "Shamrock Affiliates") to the Borrower and each endorser or guarantor hereof and any cash, securities, instruments or other property of the Borrower and each endorser and guarantor hereof in the possession of Shamrock or any Shamrock Affiliate, whether for safekeeping or otherwise, or in transit to or from Shamrock or any Shamrock Affiliate (regardless of the reason Shamrock or Shamrock Affiliate had received the same or whether Shamrock or Shamrock Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower and any endorser and guarantor hereof to Shamrock or any Shamrock Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower or any endorser or guarantor hereof to Shamrock or any Shamrock Affiliate at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Shamrock or any Shamrock Affiliate.

No delay or omission on part of Shamrock in exercising any right hereunder shall operate as a waiver of such right or of any right of Shamrock, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right of any future occasion. The Borrower and every endorser or guarantor of this Note, regardless of the time, order or place of signing, waives presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waives all recourse to surteyship and guarantor defenses generally, including any defense based on impairment of collateral.

The Borrower and each endorser and guarantor of this Note shall indemnify, defend and hold Shamrock and its directors, officers, employees, agents and attorneys harmless against any claim brought or threatened against Shamrock by the Borrower, by any endorser or guarantor, or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of Shamrock's relationship with the Borrower or any endorser or guarantor hereof (each of which may be defended, compromised, settled or pursued by Shamrock with counsel of Shamrock's selection, but at the expense of the Borrower and any endorser and/or guarantor), except for any claim arising out of the gross negligence or willful misconduct of Shamrock.

The Borrower and each endorser and guarantor of this Note agree to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4.0% plus the rate otherwise applicable. If any payment due under this Note is unpaid for 10 days or more, the Borrower shall pay, in addition to any other sums due under this Note

(and without limiting Shamrock's other remedies on account thereof), a late charge equal to 5.0% of such unpaid amount.

This Note shall be binding upon the Borrower and each endorser and guarantor hereof and upon their respective heirs, successors, assigns and legal representatives, and shall inure to the benefit of Shamrock and its successors, endorsees and assigns.

The liabilities of the Borrower and any endorser or guarantor of this Note are joint and several; provided, however, the release by Shamrock of the Borrower or any one or more endorsers or guarantors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any endorser or guarantor of this Note are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to Shamrock. Each reference in this Note to the Borrower, any endorser, and any guarantor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to Shamrock of the person from whom contribution is sought have been satisfied in full. The release or compromise by Shamrock of any collateral shall not release any person obligated on account of this Note.

The Borrower and each endorser and guarantor hereof each authorizes Shamrock to complete this existence. Note if delivered incomplete in any respect. A photographic, electronic or other reproduction of this Note may be made by Shamrock, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

This Note is delivered to Shamrock at one of its offices in Boston, Massachusetts, shall take effect as a sealed instrument and shall be governed by the internal laws of the Commonwealth of Massachusetts.

The Borrower and each endorser and guarantor of this Note each irrevocably submits to the exclusive jurisdiction of any Federal or state court sitting in Massachusetts, over any suit, action or proceeding arising out of or relating to this Note. Each of the Borrower and each endorser and guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Each of the Borrower and each endorser and guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, endorser's or guarantor's address shown below or as notified to Shamrock and (ii) by serving the same upon the Borrower, endorser(s) or guarantors in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower or such endorser or guarantor.

THE BORROWER, EACH ENDORSER AND GUARANTOR AND SHAMROCK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER, EACH ENDORSER AND GUARANTOR TO SHAMROCK, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY

TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED.   THE BORROWER, EACH ENDORSER AND GUARANTOR AND SHAMROCK EACH CERTIFIES THAT NEITHER SHAMROCK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SHAMROCK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

[End of page; the next page is the signature page]

This Floorplan Note is executed as an instrument under seal as of the date first written above.

WITNESS:

Name: William Skally

Borrower:
**J&K ACQUISITIONS AND HOLDINGS INC.**

Name: Kristin M Allard

Title: President

WITNESS:

Name William Skally

Name: Jason Tanner

Title: Vice President

**[Signature Page to Floorplan Note (Demand)]**

## LOAN AND SECURITY AGREEMENT

This LOAN AND SECURITY AGREEMENT is entered into at Boston, Massachusetts, as of 1 day of September, 2016, between J&K Acquisitions And Holdings INC., a Massachusetts Corporation with its principal office located at 1405 GAR Highway Swansea Ma. 02777 ("Borrower") and **SHAMROCK FINANCE LLC** a limited liability company organized under the laws of the Commonwealth of Massachusetts with an address of 116 Topsfield Road, Wenham, Massachusetts 01984 ("Shamrock"). Certain terms with initial capitalization are defined in Section 9 hereof.

The parties agree as follows:

1. THE LOANS

1.1 Loans. Shamrock will consider extending financial accommodations to Borrower subject to the terms and conditions hereof.

(a) Floorplan Loan. So long as no Default exists, and until the earlier of (i) Demand, or (ii) Shamrock's election to terminate Borrower's ability to request future Floorplan Advances under this Agreement, Borrower may request Shamrock to extend credit in the form of Advances to finance or partially finance Borrower's purchase of Vehicles. Upon Borrower's request, Shamrock, in its sole discretion, may make loans ("Floorplan Advances") to Borrower, up to an aggregate amount ("Floorplan Limit") of

Two Hundred Thousand and 00/100 DOLLARS($200,000.00)

to finance or partially finance Borrower's purchase of Vehicle Inventory. Requests for Floorplan Advances must be made in accordance with such procedures, and be accompanied by whatever documentation, as Shamrock may require from time to time. SHAMROCK HAS NO OBLIGATION TO MAKE FLOORPLAN ADVANCES; ITS DECISION WHETHER TO DO SO IS SOLELY WITHIN ITS DISCRETION AT ALL TIMES. Shamrock's right to refuse to make a Floorplan Advance has been bargained for and is a factor affecting pricing hereunder and may not be waived, suspended or altered except in a writing signed by Shamrock specifically referring to this clause. It is Shamrock's present intention to make Floorplan Advances at the advance rates set forth in Part 1.1 of the Terms Schedule attached hereto and to such other terms and conditions that Shamrock generally applies to other automotive floorplan Borrower from time to time. Borrower agrees to use the proceeds of Floorplan Advances only as set forth in Part 1.1 of the Terms Schedule attached hereto.

1.2 Notes. All Floorplan Advances described in Section 1.1(a) hereof shall be evidenced by Borrower's Floorplan Note (Demand) in the face amount of the Floorplan Limit payable to the order of Shamrock (as renewed, extended, amended and/or restated from time to time, and all replacements and substitutions therefor, the "Floorplan Note").

1.3. Funding. Shamrock may make Loan proceeds available by credit to any deposit account of Borrower with Shamrock, or may be paid to Borrower or may be applied to any Obligations, as Shamrock may in each instance elect. Shamrock additionally may elect to fund Floorplan Advances directly to the manufacturer, vendor, distributor, supplier or auction house of Financed Vehicles related thereto.

1.4 Interest. Borrower shall pay interest on the Loans outstanding from time to time at the rates, at the times, and in the manner specified in the Notes.

1.5 Floorplan Principal Payments. All outstanding Floorplan Advances are payable ON SIXTY (60) DAYS WRITTEN DEMAND prior to an Event of Default, and immediately ON DEMAND after an Event of Default. Prior to demand, Borrower shall repay Floorplan Advances with respect to unsold Financed Vehicles ("Curtailment Payments") in the amounts and at the times set forth on Part 1.2 of the Terms Schedule. Additionally, upon Borrower's sale, lease, exchange, trade, or any other disposition of any Financed Vehicle, and upon its loss or destruction, Borrower shall pay the Amount Financed with respect to such Financed Vehicle on the earlier of (i) Borrower's receipt of proceeds, or (ii) the applicable date described on the Terms Schedule attached hereto. Such payment shall be made in such amount regardless of whether the proceeds received by Borrower are in cash or in kind or are less than the Amount Financed.

1.6 Loan Balances. Shamrock's internal records shall constitute presumptive evidence of the then outstanding principal balance(s) of all Loans as well as the amount of interest, fees and charges that may be owed to Shamrock at any time. Absent manifest error, any statement sent or made electronically available to Borrower showing the principal balance shall constitute conclusive evidence thereof unless objected to in writing within sixty (60) days of the date thereof.

1.7 Authorized Persons: Manufacturer's Request. Any person duly authorized by a general borrowing resolution of Borrower, or in the absence of such a resolution, the President, Treasurer, any Vice President, or the General Manager of Borrower (all of such persons determined by reference to Shamrock's records may request Floorplan Advances hereunder, either orally or otherwise, but Shamrock at its option may require that all loan requests be in writing. Shamrock shall incur no liability to Borrower in acting upon any request referred to herein which Shamrock believes in good faith to have been made by an authorized person or persons.

1.8 Manufacturer Not Beneficiary. No manufacturer, distributor or supplier or any person (other than Shamrock and Borrower) may rely on this Agreement or any term or provision hereof.

1.9 Over Advances. Shamrock may make advances in excess of the Floorplan Limit, in Shamrock's sole discretion. Any such advances shall be secured by the Collateral, as hereinafter defined, and shall be due and payable to Shamrock as a Floorplan Advance, on demand, shall be secured by the Collateral and shall bear interest at the rate set forth in the Floorplan Note. Shamrock 's failure to demand payment of any over advance shall not prejudice Shamrock 's rights to demand payment of such over advance or any other over advance, at any time.

## 2. SECURITY

2.1 Grant of Security Interest. In consideration hereof, Borrower hereby grants to Shamrock a security interest in, a lien on, and pledge and assignment of all of its now owned and hereafter acquired tangible and intangible personal property, to wit:

All present and future property and rights of Borrower in and to: (a) all inventory, including without limitation, all new and used motor vehicle, motorcycle, all-terrain vehicle, scooter, power sport vehicle and parts inventory, and further including without limitation, all inventory on order, but not yet delivered to Borrower, and all consigned goods, and all motor vehicles and other goods held for short or long term rental or lease and for use as so-called demonstrators and service loaners; (b) all accounts,

contact rights, chattel paper, electronic chattel paper, instruments, documents, promissory notes, and supporting obligations; and all right and benefits under any agreement for an interest rate swap, forward rate, cap, floor, or collar, or the like, to the full extent assignable; (c) all payment intangibles and all rights to receive payment, credits, and other compensation, including without limitation, so called "factory credits" and holdbacks, incentive payments, stock rebates, allowances or reserves from any (other) manufacturer, distributor, or supplier of motor vehicles or motorcycles, or from any of their subsidiaries or affiliates or any other banks or lenders; (d) all general intangibles, franchise rights and rights under sales and service agreements, books, records, files, computer disks, software, involving or emanating from Borrower's business or assets; (e) all investment property; (f) all payments and credits and accounts that Shamrock may owe to Borrower; and all funds of Borrower that Shamrock may have to retain in its possession, whether in the form of cash collateral, reserve, contingency, escrow accounts to the extent of Borrower's interested, deposit accounts, operating accounts, or otherwise; (g) all deposit and other accounts in and with all other banks and depositories; (h) all equipment including without limitation, all furniture, machinery, tools; (i) all fixtures; and (j) all additions, substitutions, replacements, accessories, attachments and accessions to, and all proceeds of the foregoing and of proceeds, including all motor vehicles, motorcycles and other goods received in trade, claims, and tort recoveries, insurance proceeds, refunds of insurance premiums, proceeds derived from Borrower's sale or assignment of chattel paper, and all cash and other funds held in all deposit accounts in which proceeds may be deposited (all of the foregoing, the "Collateral").

The security interest granted by this Agreement is given to and shall be held by Shamrock as security for the payment and performance of all Obligations, including, without limitation, all amounts outstanding pursuant to the Loan Documents and all amounts due under any guaranty previously, concurrently, or hereafter executed by Borrower, and shall continue even if at any time there shall be no amounts outstanding, until payment and performance of all Obligations or until terminated in a writing signed by an authorized officer of Shamrock.

2.2 Perfection. Borrower authorizes Shamrock to file whatever financing statements and other documents and to take whatever additional actions Shamrock deems to be necessary or appropriate to perfect and continue perfection, and to give notice of Shamrock 's security interest, including a filing indicating as collateral "all assets," all at Borrower's expense, and ratifies any prior filing or action. Shamrock may make electronic filings of financing statements and other filed or recorded documents. Without limitation of the generality of the foregoing (a) to the extent that any of the Collateral is held by a third party (such as consignee or Bailee) (i) notice of the security interest created by this Agreement in such Collateral shall be given to each such third party, and (ii) Borrower shall, upon the request of Shamrock, obtain and deliver to Shamrock a written and signed acknowledgement from each such third party that it is holding the Collateral for the benefit of Shamrock; (b) to the extent that any of the Collateral is comprised of deposit accounts or investment property not in Shamrock 's possession, Borrower shall, upon the request of Shamrock (i) provide to Shamrock all consents, control agreements, and other agreements or instruments from third parties that are desirable or required by Shamrock to perfect Shamrock 's security interest in such Collateral, and (ii) take all other actions, and obtain, execute and deliver such documents and instruments, as are desired or required by Shamrock to perfect Shamrock 's security interest in such Collateral and give Shamrock control (as defined in the Code) of such Collateral; (c) to the extent that any of the Collateral is comprised of electronic chattel paper, Borrower will ensure that (i) there is only one identifiable authoritative copy of the electronic chattel paper record, (ii) the authoritative electronic chattel paper record for all electronic chattel paper in which Shamrock has a security interest will identify Shamrock as the first lien-holder, (iii) the authoritative electronic chattel paper record for all electronic chattel paper in which Shamrock has a security interest will be transferred to and maintained by Shamrock or a third party custodian designated by Shamrock, and (iv) changes or additions to the electronic chattel

paper may not be made without the consent of Shamrock; (d) to the extent that any of the Collateral is comprised of types of Collateral that can be perfected by possession, or by either possession or filing all such Collateral shall be delivered to Shamrock; and (e) Borrower agrees to execute any further documents, and to take any further actions, reasonably requested by Shamrock to evidence, perfect or protect the security interests granted herein or to effectuate the rights granted to Shamrock herein.

2.3 Motor Vehicle Titles. Without limiting the generality of Section 2.2 hereof, at any time, with or without cause, Shamrock may require Borrower to deliver to Shamrock, or to Shamrock 's designee, the certificate of origin with respect to each New Vehicle, and the original certificate of title or registration with respect to each Used Vehicle, Demonstration Vehicle, Program Vehicle, or lease or rental Vehicle, regardless of whether such Vehicle is a Financed Vehicle. Shamrock may retain physical possession of such certificates until such time as the particular Vehicle is sold in the ordinary course of business, and Borrower pays to Shamrock the Amount Financed with respect thereto or if such Vehicle is not a Financed Vehicle, the proceeds of the sale thereof.

2.4 First Priority Security Interest. Unless Shamrock otherwise agrees in writing, and subject to the filing of financing statements in all proper locations and the filing of continuation statements when and to the extent required by the Code, Shamrock has and will continue to have a first priority security interest in all of the Collateral except that Shamrock's security interest in certain items of equipment may be subject to purchase money security interests permitted hereunder.

2.5 Enforceability of Collateral. All of Borrower's installment contracts, and leases and other chattel paper, electronic chattel paper, general intangibles, payment intangibles, documents, instruments, promissory notes, and supporting obligations, are enforceable in accordance with their respective terms, are genuine, and comply with all applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated thereon have authority and capacity to contract, and are in fact obligated as they appear to be thereon.

2.6 Motor Vehicle Inventory Runs. Borrower shall deliver to Shamrock, immediately on request of Shamrock, a complete and current list of all Vehicle Inventory, identifying each Financed Vehicle, the Amount Financed with respect thereto, its location, its mileage, whether it is subject to any sales or lease contract, the date of Borrower's acquisition thereof, the price paid therefor, and whether Borrower holds clear title.

2.7 Use and Titling of Financed Vehicles.

(a) Except as permitted under Section 2.7(b) hereof, Borrower will not register, license, title, or use any Financed Vehicle or other Vehicle Inventory for any purposes other than offering for sale or lease, or for use by Borrower's service customers who lease such Vehicles as daily service loaners.

(b) Borrower may permit their senior managers, and other individuals designated by them, to use Financed Vehicles for such purposes as Borrower determines appropriate, so long as: (i) no Default shall have occurred; (ii) immediately on request of Shamrock at any time, Borrower provides Shamrock with the identity of any such Vehicles so used and the respective users thereof; (iii) on two business days' notice, all such Vehicles shall be present on Borrower's premises, for inspection by Shamrock 's representatives; (iv) such Vehicle use is within the coverage of Borrower's property and casualty policies, and (v) such Vehicle use is not inconsistent with practices of other motor vehicle dealers in Borrower's general market areas.

(c) In any event, Borrower will immediately notify Shamrock should Borrower apply for or obtain a certificate of title with respect to any Vehicle, including without limitation, vehicles intended for short term rentals and service loaners. Borrower shall sign and deliver whatever additional documents as may be necessary and proper in Shamrock 's sole discretion to complete perfection of Shamrock 's security rights and interest with respect to each such Vehicle.

2.8 Sales of Motor Vehicles and other Collateral. Borrower shall not, without Shamrock's prior written consent, sell, lease, assign, transfer, convey, option, mortgage or grant any type of security interest in or with respect to any item of Collateral, provided however, so long as no Event of Default exists, and subject to the terms, conditions and payments of and required hereby:

i. Borrower may sell or lease Vehicles, parts and other inventory to bona fide third party purchasers and lessees in the Ordinary Course of its Business from its premises or other premises that it shall have described in a written notice to Shamrock, for fair market value.

ii. Borrower may sell chattel paper that constitutes proceeds of the sale of a motor vehicle or motorcycle under clause (i) to finance companies for cash or its equivalent in the ordinary course of business, so long as such cash or equivalent is paid to Shamrock in accordance with the terms of Section 2.10.

iii. Borrower may grant (purchase money) security interests in specific items of equipment other than Vehicles, acquired by it after the date hereof, so long as the lien thereof does not attach to any property other than that financed, nor secure more than the purchase price thereof.

2.9. Lodging of Assignment. At any time after demand or if Shamrock believes that a Default may have occurred, without notice to Borrower, Shamrock may notify any or all Borrowers' account debtors and other payment obligors (including manufacturers, distributors and suppliers, and banks and other depositories) of the security interest granted to Shamrock hereby, and direct such person(s) to make payment of amounts on which Shamrock has a security interest, including as to Borrower, so-called "factory credits," directly to Shamrock. Borrower unconditionally and irrevocably authorizes and instructs each of its account debtors and payment obligors to make payment directly to Shamrock or as instructed by Shamrock. Shamrock may collect such payments and apply such amounts to the then outstanding Loans in such manner as Shamrock determines appropriate.

2.10 Collateral Proceeds; Trust. Borrower shall promptly pay-over and deliver Shamrock all proceeds, less any amounts that may be retained by Borrower as provided in the last sentence of this Section 2.10, derived from the sale or lease of Financed Vehicles or the sale of Chattel Paper, or in any way derived from any other Collateral. Upon the sale or lease of a Financed Vehicle in whole or partial consideration for a (trade-in) vehicle or motorcycle from the buyer or lessee, then, except to the extent that Shamrock agrees to specifically finance such trade-in, Borrower shall promptly pay to Shamrock an additional amount equal to the trade-in allowance or credit granted to the buyer or lessee of each purchased or leased vehicle (less any amounts that may be retained by Borrower as provided in the last sentence of this Section 2.10), which amount shall represent substitute Collateral proceeds. At any time, with or without cause, Shamrock may require that Borrower pay-over and deliver to Shamrock, proceeds in the form received, including third- party checks received by Borrower in connection with sales of Inventory, or arising out of sales of chattel paper. In any event, any proceeds received by Borrower, whether in the form of checks, drafts, credit card drafts, or otherwise shall be the property of Shamrock, and at all times while Borrower may hold such cash or cash-equivalent proceeds, Borrower shall do so "in trust" for and on behalf of Shamrock. Borrower and Shamrock

intend and agree that there shall be a true trust relationship between Borrower and Shamrock, with Borrower assuming full fiduciary duties, responsibilities, and obligations to and in favor of Shamrock. Provided however, so long as no Event of Default exists and Shamrock has not required that Collateral Proceeds be deposited into a restricted account under Section 2.11, Borrower may retain for working capital the excess of: (i) the proceeds received from the sale, lease or other disposition of a Financed Vehicle, over (ii) the Amount Financed with respect thereto.

2.11 Account. Proceeds Account. Any Collateral proceeds received in cash or its equivalent not paid directly to Shamrock shall be deposited in an account with Shamrock. At any time, with or without cause, Shamrock may require Borrower to deposit such proceeds into an account with Shamrock containing only such proceeds, and from which only payments to Shamrock and transfers to Borrowers' operating account are withdrawn, and, alternatively, may require Borrower to take whatever action Shamrock requests to ensure that all Collateral proceeds are paid directly into a segregated account maintained with Shamrock from which withdrawals are restricted to Shamrock. All or any portion of the Collateral proceeds received in such a restricted account may be, at Shamrock's sole discretion: (a) paid to Borrower; (b) applied to the Loans or other Obligations, but prior to an Event of Default, any proceeds of a Financed Vehicle shall be first applied to the Amount Financed with respect thereto; (c) retained as cash Collateral; or (d) any combination of the above as Shamrock may determine appropriate, but prior to an Event of Default, any proceeds of a Financed Vehicle shall be first applied to the Amount Financed with respect thereto.

2.12 Keeper. At any time, with or without cause, without notice to Borrower and without legal process Shamrock may designate a so-called keeper to take one or more of the following actions: (a) to enter any locations where Borrower conducts business or maintains collateral, and to remain on premises for such time as Shamrock may deem desirable; (b) to take constructive or actual possession and control over Financed Vehicles; (c) to take possession and control over certificates of origin and title with respect to each Vehicle comprising part of Borrowers' inventory or equipment; (d) to take constructive or actual possession and control over all documents, books, records, papers, accounts, chattel paper, electronic chattel paper, instruments, promissory notes, general intangibles, payment intangibles, supporting obligations, contract rights, software or any similar types of tangible or intangible property relating to or comprising part of the Collateral; (e) to receive payment of all Collateral proceeds; and/or (f) to take whatever additional actions Shamrock may deem necessary or desirable to protect and preserve the Collateral, and to carry out, and to protect and preserve Shamrock 's security rights and remedies. The keeper need not be independent, and may be an officer, employee, or agent of Shamrock. The keeper shall have no fiduciary duty or obligation to Borrower or to any other person other than Shamrock. .Borrower shall fully cooperate with the keeper and shall provide the keeper with such offices and other facilities as Shamrock may request. After any Default, Borrower shall pay the reasonable fees of the keeper (including charges for Shamrock employees), which obligation shall be secured by this Agreement. Shamrock's appointment of a keeper shall not impair or in any way prejudice the rights of Shamrock to exercise any of its security rights and remedies provided under this Agreement, or under any Loan Document, or under applicable law.

2.13 Power of Attorney. Borrower irrevocably appoints Shamrock as its true and lawful attorney-in-fact, coupled with an interest, and with full power of substitution and assignment, for the purposes of accomplishing any and all of the following actions:. (a) to sign Borrowers' name on any motor vehicle bill of sale, or certificate of title or registration, or application or form submitted to a public agency; (b) to sign Borrowers' name on any and all agreements or documents that are necessary and proper to carry out and enforce Shamrock's security rights and interests; (c) to notify manufacturers, distributors and suppliers of Borrowers' Inventory that they are authorized to accept payment from Shamrock for Inventory that Shamrock may finance pursuant to this Agreement; (d) to file, and to the extent necessary, to sign Borrowers' name on, or otherwise authenticate any financing or continuation statement, or other documents that are necessary and proper to perfect, continue perfection, or amend

Shamrock 's security interest; (e) to demand collect, receive; receipt for, sue and recover all sums of money or other property which may now and in the future become due, owing and payable from the Collateral; (f) to execute, sign and endorse Borrowers' name to any and all claims, instruments, receipts, checks, drafts or warrants; (g) to settle or compromise any and all claims arising under the Collateral, and in Borrowers' name and place, to execute and deliver a release and settlement for the claim; (h) to file any claim or claims or to take any action or institute or take part in any proceeding either in Shamrock's own name or in Borrowers' name; and (i) to sign Borrowers' name to any waiver of landlord's lien, and in Borrowers' name, place and stead, to notify and obtain waivers of any landlord's lien with respect to any facility leased or rented by Borrower, or in or at which any of the Collateral may be kept or stored; (j) to sign Borrowers' name to any notice of assignment of deposit account, and in Borrowers' name, place and stead, to notify and obtain the concurrence of Borrowers' depository bank; (k) to sign Borrowers' name to any notice of assignment of factory credits and other payments, and in Borrowers' name, place and stead, to notify and obtain the concurrence of manufacturers, distributors, and suppliers of Borrowers' Inventory and other Collateral; and (I) in Borrowers' name, place and stead, to perform such acts as may be required of Borrower under this Agreement or under any Loan Document, but which Borrower may not fully, or may refuse to perform for any or no reason, or that Borrower may delay in performing. Shamrock may act as Borrowers' attorney in fact any time it determines appropriate to do so, regardless of default, but shall never be obligated to so act. This power of attorney is given as security for Borrowers' Loans and Obligations and is coupled with an interest; and the authority conferred on Shamrock is irrevocable and shall remain in full force and effect until renounced by Shamrock in writing. Borrowers shall execute such separate, confirming, Powers of Attorney as Shamrock may request.

2.14 Real Estate Interests. Borrower shall assign its rights in each lease or other agreement pursuant to which it possesses, occupies or uses any real property or interest therein; and shall obtain from the owner thereof, and if requested by Shamrock, from any mortgagee thereof, (i) a consent to such assignment, and (ii) an agreement that Shamrock may occupy such property, to effect the purposes of this Agreement, on such terms as Shamrock deems acceptable. For Borrowers, part 3.4 of the Disclosure Schedule attached hereto, correctly identifies its Landlord, its lease or other occupancy arrangement, and the landlord's mortgagee(s).

2.15 Guaranties. The payment and performance of all Obligations shall be unconditionally guaranteed at all times by those persons and entities listed in Part 2.1 of the Terms Schedule as of the date hereof, pursuant to guaranty agreements acceptable to Shamrock.

## 3. REPRESENTATIONS AND WARRANTIES

3.1 Organization and Qualification. Borrower together is a duly organized and existing entity of the type set forth in Part 3.1 of the Borrowers' Disclosure Schedule attached hereto. Borrower is in good standing under the laws of the state of its organization, which state is set forth on the Disclosure Schedule. Borrower is in good standing under the laws of said state, has the power to own its property and conduct its business as now conducted and as currently proposed to be conducted, and is duly qualified to do business under the laws of each state where the nature of the business done or property owned requires such qualification. The exact current name and all prior names of Borrower are set forth in Part 3.1 of the Disclosure Schedule attached hereto. The organization identification number (as that term is used in the Code) and the Federal tax identification number for Borrower are set forth on the Disclosure Schedule. Further, except as set forth on the Disclosure Schedule, Borrower have not been party to any merger, consolidation, or reincorporation or other reorganization. Borrower do not have any subsidiaries nor any investments or ownership interests in any entity except as set forth on the Disclosure Schedule.

3.2 Licenses and Dealership Agreements. Borrower hold all state and local licenses necessary to

sell and service used Vehicles, in the manner now conducted by it and as is usual and customary of other Vehicle dealers in the state and city or town of its location. All such licenses are listed on Part 3.2 of the Disclosure Schedule attached hereto. True copies of the licenses and dealership agreements described herein have been delivered to Shamrock.

3.3 Title to Collateral. As of the date hereof, Borrower is (and as to Collateral that Borrower may acquire after the date hereof, will be) the lawful owner of the Collateral, and the Collateral and each item thereof is, will be and shall continue to be free of all restrictions, liens, encumbrances or other rights, title or interests, credits, defenses, recoupments, set-offs or counterclaims whatsoever, (other than the security interest therein granted to Shamrock hereby and (i) those liens set forth on Part 3.3 of the Disclosure Schedule, and (ii) purchase money liens on, and leases of, specific items of equipment). Borrower have not transferred, assigned, sold, pledged, encumbered, subjected to lien or granted any security interest in, and will not transfer, assign, sell (except sales or other dispositions in the Ordinary Course of Business in respect to inventory as expressly permitted in this Agreement), pledge, encumber, subject to lien or grant any security interest in any of the Collateral (or any of Borrowers' right, title or interest therein), to any person other than Shamrock. The Collateral is and will be valid and genuine in all respects. Borrower will warrant and defend Shamrock's right to and interest in the Collateral against all claims and demands of all persons whatsoever.

3.4. Places of Business. Borrowers' chief executive office and primary place of business is correctly stated in Part 3.4 of the Disclosure Schedule attached hereto. The Collateral shall be maintained at that location and the other locations, if any, listed on the Disclosure Schedule attached hereto, and Borrower shall, during the term of this Agreement, keep Shamrock currently and accurately informed in writing of each of its other places of business, and shall not move any Collateral to any other location without giving Shamrock at least thirty (30) days prior written notice thereof, except that Borrower may move Vehicles to auction lots in connection with the sale thereof in the usual course of Borrowers' business, consistent with the practices of other Vehicle dealers.

3.5 Valid Obligations. The execution, delivery and performance of the Loan Documents have been duly authorized by all necessary corporate or other action and each represents a legal, valid and binding obligation of Borrower and is fully enforceable according to its terms, except as limited by laws relating to the enforcement of creditors' rights.

3.6 Conflicts. There is no provision in Borrowers' organizational or charter documents, if any, or in any indenture, contract or agreement to which Borrower is a party which prohibits the execution, delivery or performance of the Loan Documents.

3.7 Litigation. There are no civil or criminal actions, suits, proceedings or counterclaims, or any investigations or demands or claims by any Attorney General or other regulatory authority, pending or to the knowledge of Borrower threatened against Borrower or any Guarantors except as set forth in Part 3.5 of the Disclosure Schedule attached hereto, if any.

3.8 Third Parties. Shamrock shall not be deemed to have assumed any liability or responsibility to Borrower or any third person for the correctness, validity or genuineness of any instruments or documents that may be released or endorsed to Borrower by Shamrock (which shall automatically be deemed to be without recourse to Shamrock in any event) or for the existence, character, quantity, quality, condition, value or delivery of any goods purporting to be represented by any such documents; and Shamrock, by accepting such security interest in the Collateral, or by releasing any Collateral to Borrower, shall not be deemed to have assumed any obligation or liability to any supplier or debtor or to any other third party, and Borrower agrees to indemnify and defend Shamrock and hold it harmless in respect to any claim or proceeding arising out of any matter referred to in this paragraph.

3.9     Taxes.   Borrower have filed all Federal, state and other tax returns, including sales tax returns required to be filed (except for such returns for which current and valid extensions have been filed), and all taxes, assessments and other governmental charges due from Borrower or with respect to which Borrower is subject to withholding responsibility, have been fully paid.   Borrower have established on its books reserves adequate for the payment of all Federal, state and other tax liabilities.

3.10    Information.   All financial and other information provided or that will be provided to Shamrock relating to Borrower and each of its Affiliates is accurate, not misleading, and does not fail to disclose all material facts appropriate for Shamrock to know Borrowers' financial position and prospects.   Since the date of the most recently delivered financial information as to Borrower, there has been no material adverse change in its financial position, prospects, properties or management.

## 4.     AFFIRMATIVE COVENANTS

4.1     Payments and Performance.    Borrower will duly and punctually pay all Obligations becoming due to Shamrock and will duly and punctually perform all Obligations on its part to be done or performed.

4.2     Books and Records; Inspection.   Borrower will at all times keep proper books of account in which full, true and correct entries will be made of its transactions in accordance with generally accepted accounting principles, consistently applied.   Borrower will at all reasonable times make its books and records available in its offices for inspection and examination by Shamrock and Shamrock's representatives; and at all times, and without notice will permit inspection of the Collateral and all of its properties by Shamrock and Shamrock 's representatives.    Borrower will from time to time furnish Shamrock with such information and statements as Shamrock may request in its sole discretion with respect to the Obligations or Shamrock 's security interest in the Collateral.   Borrower shall, during the term of this Agreement, keep Shamrock currently and accurately informed in writing of each location where its records relating to the Collateral are kept, and shall not remove such records from its principal place of business without giving Shamrock at least thirty (30) days prior written notice thereof.

4.3     Instructions to Vendors.   Borrower will and does hereby instruct each person who may from time to time sell Vehicles to Borrower to respond to direct inquiries and requests for information from Shamrock with respect to any and all matters and transactions involving Borrower.   Borrower waives all rights of confidentiality and privacy and instructs its vendors to provide Shamrock with whatever information and schedules Shamrock may request.

4.4     Financial Statements.   Borrower will deliver to Shamrock the following reports and other information, and from time to time, such other financial data and information about Borrower and any Guarantors as Shamrock may reasonably request:

    (a)     monthly, within fifteen (15) days of month-end, copies of all financial statements submitted relating to the results of operations and financial condition as of the end of the previous month ;

    (b)     annually, within one hundred twenty (120) days of fiscal year-end, statements of financial position, income, and cash flow, in form and detail satisfactory to Shamrock, which statements shall have been reviewed by an independent accountant acceptable to Shamrock (the "Accountant"), together with copies of all letters and advice from the Accountant;

(c) annually, on or before April 30 of each year or such other date approved by Shamrock, but in no event later than 15 days after filing, a signed copy of each Guarantor's and Borrowers' filed federal tax return for the prior year;

(d) annually, on or before April 30 of each year, a signed personal financial statement of the individual Guarantor, in form and detail satisfactory to Shamrock;

(e) from time to time, such financial statements, Vehicle purchase and sales reports, bank records, and other financial data and information about Borrower as Shamrock may reasonably request, including data and information provided to or by any Approved Manufacturer or affiliate thereof; and

(f) from time to time any financial data and information about any Guarantor as Shamrock may reasonably request.

4.5 Conduct of Business; Franchises. Borrower shall maintain its existence in good standing and comply with all laws and regulations of the United States and of any state or states thereof and of any political subdivision thereof, and of any governmental authority which may be applicable to it or to its business. Borrower will maintain all licenses, franchises, and authorizations that may be necessary or desirable for it to continue its business operations as now and in the future conducted.

4.6 Contacts with Accountant. Borrower hereby authorizes Shamrock to directly contact and communicate with any accountant employed by it in connection with the review and/or maintenance of its books and records or preparation of any financial reports delivered by or at the request of Borrower to Shamrock.

4.7 Operating and Deposit Accounts. Borrower shall maintain with Shamrock its primary operating and deposit accounts at those institutions set forth at 3.6 of the Disclosure Schedule. At the option of Shamrock and with Borrower's authorization, loan payments, fees, and other amounts due hereunder will automatically be debited from Borrower's primary operating account or other account, excluding only any account designated as a payroll account and used solely for funding and disbursement of employee payroll.

4.8 Taxes. Borrower will promptly pay all real and personal property taxes, assessments and charges and all franchise, income, unemployment, old age benefits, withholding, sales and other taxes assessed against it or payable by it before delinquent; provided that this covenant shall not apply to any tax assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained. Shamrock may, at its option, from time to time, discharge any taxes, liens or encumbrances on any of the Collateral, and Borrower will pay to Shamrock on demand all amounts so paid by it.

4.9 Maintenance. Borrower will keep and maintain the Collateral and its other properties, if any, in good repair, working order and condition. Shamrock may, at its option, from time to time, take any other action that Shamrock may deem proper to repair, maintain or preserve any of the Collateral, and Borrower will pay to Shamrock on demand all amounts so paid or incurred by it.

4.10 Insurance. Borrower now has and will maintain in force casualty insurance on all Collateral against risks customarily insured against by automobile dealers, containing such terms and written by such companies as may be satisfactory to Shamrock, such insurance to be payable to Shamrock as its interest may appear in the event of loss and to name Shamrock as insured pursuant to a standard loss payee clause; no loss shall be adjusted thereunder without Shamrock 's approval; and all

such policies shall provide that they may not be canceled without first giving at least thirty (30) days' written notice of cancellation to Shamrock. In the event that Borrower fails to provide evidence of such insurance, Shamrock may, at is option, secure such insurance and charge the cost thereof to Borrower. At the option of Shamrock, all insurance proceeds received from any loss or damage to any of the Collateral shall be applied either to the replacement or repair thereof or as a payment on account of the Obligations. From and after the occurrence of an Event of Default, Shamrock is authorized to cancel any insurance maintained hereunder and apply any returned or unearned premiums, all of which are hereby assigned to Shamrock, as a payment on account of the Obligations. Borrower will immediately notify Shamrock of (i) any loss or damage to any Financed Vehicle, and (ii) any (other) loss or damage to, or material diminution in, or any other occurrence that would adversely affect the value of inventory, equipment or other Collateral, excluding only valuation shrinkage resulting from the mere passage of time or general market conditions.

4.11 Notification of Default. Within five (5) days of Borrower becoming aware of any Default, Borrower shall give Shamrock written notice thereof specifying the nature and duration thereof and the action being or proposed to be taken with respect thereto.

4.12 Notification of Litigation. Borrower will promptly notify Shamrock in writing (i) of any commenced or threatened litigation in which the amount demanded exceeds $10,000, or which, if adversely determined, would or might be materially adverse to the financial condition of Borrower and (ii) of any investigative proceedings of a governmental agency or authority commenced or threatened against any of them, regardless of apparent scope or magnitude, but excluding routine periodic examinations. For purposes of this section, any litigation seeking certification as a class action shall be considered to have possible material adverse effect.

4.13 Pension Plans. With respect to any pension or benefit plan maintained by Borrower, or to which Borrower contributes (a "Plan"), the benefits under which are guaranteed, in whole or in part, by the Pension Benefit Guaranty Corporation created by the Employee Retirement Income Security Act of 1974, P.L. 93-406, or any governmental authority succeeding to any or all of the functions of the Pension Benefit Guaranty Corporation ("PBGC"), Borrower will (a) fund each Plan as required by the provisions of Section 412 of the Internal Revenue Code of 1986, as amended; (b) cause each Plan to pay all benefits when due; (c) furnish Shamrock (i) promptly with a copy of any notice of each Plan's termination sent to the PBGC and (ii) no later than the date of submission to the Department of Labor or to the Internal Revenue Service, as the case may be, a copy of any request for waiver from the funding standards or extension of the amortization periods required by Section 412 of the Internal Revenue Code of 1986, as amended; and (d) subscribe to any contingent liability insurance provided by the PBGC to protect against employer liability upon termination of a guaranteed pension plan, if available to Borrower.

4.14 Environmental. As of the date hereof, neither Borrower nor any of its Affiliates, agents, employees, or independent contractors (1) have caused or are aware of a release or threat of release of Hazardous Materials (as defined herein) on any of the premises or personal property owned or controlled by Borrower, or any abutting property, which could give rise to liability under any Environmental Law (as defined herein) or any other Federal, state or local law, rule or regulation; (2) have arranged for the transport of or transported any Hazardous Materials in a manner as to violate, or result in potential liabilities under, any Environmental Law; (3) have received any notice, order or demand from the Environmental Protection Agency or any other Federal, state. or local agency under any Environmental Law; (4) have incurred any liability under any Environmental Law in connection with the mismanagement, improper disposal or release of Hazardous Materials; or (5) are aware of any inspection or investigation of any of the premises or personal property owned, leased, occupied or controlled by Borrower ("Controlled Property") or abutting property by any Federal, state or local agency for possible violations of any Environmental Law. Borrower have

delivered to Shamrock true and complete copies of all environmental reports in its possession or ever delivered to it relating to the environmental condition of any Controlled Property or abutting property, including all so-called phase-1 site assessments. Borrower represents and warrants that no such report indicates that, on Controlled Property, there may exist any Hazardous Materials except (i) as typical for automobile dealers and in compliance with all Environmental Laws, or (ii) with respect to which all appropriate remedial actions required by Environmental Laws shall have been taken and concluded.

To the best of Borrower's knowledge, no prior owner or tenant of any Controlled Property committed or omitted any act, which caused the release of Hazardous Materials on such premises or property. No notice or statement of claim or lien affecting any Controlled Property has been recorded or filed in any public records by any Federal, state or local government for costs, penalties, fines or other charges as to such property.

Borrower agrees to indemnify and hold Shamrock harmless from all liability, loss, cost, damage and expense, including attorney fees and costs of litigation, arising from any and all of its violations of any Environmental Law (including those arising from any lien by any Federal, state or local government arising from the presence of Hazardous Materials) or from the presence of Hazardous Materials located on or emanating from any Controlled Property. Borrower further agrees to reimburse Shamrock upon demand for any costs incurred by Shamrock in connection with the foregoing. Borrower agrees that its obligations hereunder shall be continuous and shall survive the repayment of all obligations.

The term "Hazardous Materials" includes but is not limited to any and all substances (whether solid, liquid or gas) defined, listed, or otherwise classified as pollutants, hazardous wastes, hazardous substances, hazardous materials, extremely hazardous wastes, or words of similar meaning or regulatory effect under any present or future Environmental Law or that may have a negative impact on human health or the environment, including but not limited to petroleum and petroleum products, asbestos and asbestos- containing materials, polychlorinated biphenyls, lead, radon, radioactive materials, flammables and explosives.

The term "Environmental Law" means any present and future Federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, relating to protection of human health or the environment, relating to Hazardous Materials, relating to liability for or costs of remediation or prevention of releases of Hazardous Materials or relating to liability for or costs of other actual or threatened danger to human health or the environment. The term "Environmental Law" includes, but is not limited to, the following statutes, as amended, any successor thereto, and any regulations promulgated pursuant thereto, and any state or local statutes, ordinances, rules, regulations and the like addressing similar issues: the Comprehensive Environmental Response, Compensation and Liability Act; the Emergency Planning and Community Right-to-Know Act; the Hazardous Materials Transportation Act; the Resource Conservation and Recovery Act (including but not limited to Subtitle I relating to underground storage tanks); the Solid Waste Disposal Act; the Clean Water Act; the Clean Air Act; the Toxic Materials Control Act; the Safe Drinking Water Act; the Occupational Safety and Health Act; the Federal Water Pollution Control Act; the Federal Insecticide, Fungicide and Rodenticide Act; the Endangered Species Act; the National Environmental Policy Act; the River and Harbors Appropriation Act; and all state and local laws that regulate, prohibit, or direct the use, storage or clean-up of any Hazardous Materials.

## 5. [INTENTIONALLY OMITTED]

## 6. NEGATIVE COVENANTS

6.1 Limitations on Indebtedness. Borrower shall not issue any evidence of indebtedness or create, assume, guarantee, become contingently liable for, or suffer to exist indebtedness other than: (i) indebtedness to Shamrock, and (ii) indebtedness or liabilities, other than for money borrowed but allowing for ordinary equipment leases and purchase money security interests in equipment other than Vehicles, incurred or arising in the ordinary course of business, or (iii) Subordinated Indebtedness to one or more of Borrower's equity owners.

"Subordinated Indebtedness" shall mean indebtedness for borrowed money, the borrowing of which shall have been approved by Shamrock prior to its incurrence, and which has been subordinated by a subordination agreement approved by Shamrock and executed and delivered by the holder thereof.

6.2 Sale of Interest. Management Agreements. Borrower shall not permit any sale or transfer of ownership of any interest in Borrower, nor a change in its President or Chief Executive Officer, without Shamrock's prior written consent, which consent will not be unreasonably withheld. No Borrower shall enter into any agreement, including a so-called management agreement, under which its operations or management and/or its profits and losses or other risks and/or benefits of operations or ownership thereof are transferred or assigned to another person or entity.

6.3 Loans or Advances. Borrower shall not make any loans or advances to any individual, firm or corporation, including without limitation its officers, employees, Affiliates and related entities: provided however that (i) Borrower may make advances to its employees, including its officers, with respect to expenses incurred or to be incurred by such employees in the Ordinary Course of Business which expenses are reimbursable by Borrower, and (ii) Borrower may sell by installment sale contracts and may lease Vehicles in the Ordinary Course of Business, subject to the terms of this Agreement.

6.4 Dividends and Distributions. Borrower shall not pay any dividends on or make any distribution on account of any class of Borrower's capital stock or other equity interest in cash or in property (other than additional shares of such stock), or redeem, purchase or otherwise acquire, directly or indirectly, any of such equity, except if Borrower is taxed as an S corporation or as a partnership, under the Internal Revenue Code of the United States, then, so long as no Default exists or would result from such distribution, Borrower may distribute to the stockholders, partners, or members, as applicable, of Borrower such amounts as are necessary to pay the tax liability of such persons arising as a result of Borrower's income. Borrower shall not pay any compensation or fee to any shareholder or other Affiliate, except reasonable compensation for services actually rendered, in amounts not in excess of that which would be payable to third parties for equivalent services.

6.5 Investments. Borrower shall not make investments in, or advances to, any individual, partnership, corporation, limited liability company, trust or other organization or person; nor purchase or otherwise invest in or hold securities, real estate or other non-operating assets or purchase all or substantially all of the assets of any entity, without the prior written consent of Shamrock which consent will not be unreasonably withheld, but may be subject to such review and analysis and to such documentation as Shamrock determines appropriate.

6.6 Merger. No Borrower will merge or consolidate or be merged or consolidated with or into any other entity without the prior written consent of Shamrock which consent will not be unreasonably withheld, but may be subject to such review and analysis and to such documentation as Shamrock determines appropriate.

6.7 Sale of Assets. No Borrower shall sell, lease, or otherwise dispose of any of its assets, except inventory and chattel paper under the terms and conditions of Section 2.8 hereof and except for the purpose of replacing machinery, equipment or other tangible personal property that, as a consequence of wear, duplication or obsolescence, is no longer used or necessary in its business, provided that fair consideration is received therefor, and the proceeds thereof, if in cash, shall be deposited in the proceeds account described in Section 2.11 hereof.

6.8 Restriction on Liens. Except as otherwise expressly permitted hereunder, no Borrower shall grant any security interest in, or mortgage of, any of its properties or assets.

6.9 Other Business. Borrower shall not engage in any business other than the authorized sale and service of used Vehicles.

6.10 Change of Name. No Borrower shall change its legal name or the state of its organization, without giving Shamrock at least thirty (30) days' prior written notice thereof.

6.11 No Margin Loans. No portion of any Loan is to be used for the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. 221 and 224.

## 7. DEFAULT

7.1 Default. "Event of Default" shall mean the occurrence of one or more of any of the following events:

(a) Borrower shall fail to timely pay or perform any Loan or other Obligation, hereunder or otherwise, including failure to pay in full and when due any installment of principal or interest, or default under any other Loan Document and in the case of weekly payments of interest, such default shall have continued for three (3) days.

(b) Without limiting the generality of clause (a) above, the failure of Borrower to hold in trust and pay to Shamrock the proceeds of the sale or lease of any Financed Vehicle in strict accordance with the terms hereof.

(c) Default of any material liability, obligation or undertaking of Borrower or any Guarantor to any person other than Shamrock, which continues uncured for 10 days, unless being contested in good faith with adequate cash reserves held pending outcome.

(d) Default (after express periods of grace, if any) by Borrower or any Guarantor under any obligations to or agreement with Shamrock or with any affiliate of Shamrock, including, without limitation, obligations under mortgage loans, under swap or other similar rate hedging agreements, and under agreements for the purchase and sale of motor vehicle installment sales contracts.

(e) Failure of any covenant or agreement herein not covered by Section 7.1(a) which continues for seven (7) days after Borrower's knowledge thereof.

(f) Any statement, representation or warranty heretofore, now or hereafter made in connection with this Agreement or in any financial statement of Borrower or any Guarantor shall

be determined by Shamrock to have been false in any material respect when made.

(g) If Borrower or any Guarantor is a corporation, trust, limited liability company or partnership, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property.

(h) Sixty (60) days after (A) the death of any Guarantor or (B), if either Borrower or any Guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member; unless in either case, all obligations of the deceased individual to Shamrock are affirmed by the estate's executor/executrix in Probate Court.

(i) The institution by or against Borrower or any Guarantor of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which Borrower or any Guarantor is alleged to be insolvent or unable to pay its respective debts as they mature, in the case of any such proceedings against Borrower, if not dismissed within sixty (60) days, or the making by Borrower or any Guarantor of an assignment for the benefit of creditors or the granting of a trust mortgage for the benefit of creditors.

(U) The service upon Shamrock hereof of a writ in which Shamrock is named as trustee of Borrower or of any Guarantor.

(k) A judgment or judgments for the payment of money shall be rendered against Borrower or Guarantor and any such judgment or shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution.

(I) Any levy, seizure, attachment, execution or similar process shall be issued or levied on any of the property of Borrower or any Guarantor not removed within thirty (30) days. This 30-day grace period shall not apply to Vehicles.

(m) The termination of any guaranty of the Obligations, subject to Section 7.1(h) hereof.

(n) The occurrence of such a material change in the condition or affairs (financial or otherwise) of Borrower or any Guarantor or other surety for any of the Obligations (a "Condition"), or the occurrence of any material event or circumstance such that Shamrock in its sole discretion deems that it is insecure or that the prospects for timely or full payment or performance of any of the Obligations have been or may be impaired, which Condition or event or circumstance is not addressed to Shamrock's satisfaction within 30 days of notice thereof.

(o) Shamrock shall reasonably believe that any of the Collateral is in danger of material misuse, loss, seizure or confiscation, or other disposition not authorized hereunder.

(p) Shamrock shall fail to acquire, or ever cease to maintain a first priority security interest in all Collateral, including after-acquired property, except as otherwise expressly permitted hereby.

7.2 Acceleration. If an Event of Default shall occur, at the election of Shamrock, all Obligations shall become immediately due and payable without notice or demand. But the foregoing provision and this Section 7 do not alter Shamrock's right to demand payment of any Obligations which may be payable on demand.

Shamrock is hereby authorized, at its election, after an Event of Default, without any further demand or

notice except to such extent as notice may be required by applicable law, to take possession and/or sell or otherwise dispose of all or any of the Collateral at public or private sale; and Shamrock may also exercise any and all other rights and remedies of a secured party under the Code or which are otherwise accorded to it in equity or at law, all as Shamrock may determine, and such exercise of rights in compliance with the requirements of law will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral. If notice of a sale or other action by Shamrock is required by applicable law, unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Borrower agrees that ten (10) days written notice to Borrower, or the shortest period of written notice permitted by such law, whichever is smaller, shall be sufficient notice; and that to the extent permitted by law, Shamrock, its officers, attorneys and agents may bid and become purchasers at any such sale, if public, and may purchase at any private sale any of the Collateral that is of a type customarily sold on a recognized market or which is the subject of widely distributed standard price quotations. Any sale (public or private) shall be without warranty and free from any right of redemption, which Borrower shall waive and release after default upon Shamrock's request therefor, and may be free of any warranties as to the Collateral if Shamrock shall so decide. No purchaser at any sale (public or private) shall be responsible for the application of the purchase money. Any balance of the net proceeds of sale remaining after paying all Obligations of Borrower to Shamrock shall be returned to such other party as may be legally entitled thereto; and if there is a deficiency, Borrower shall be responsible for the same, with interest. Upon demand by Shamrock, Borrower shall assemble the Collateral and make it available to Shamrock at a place designated by Shamrock which is reasonably convenient to Shamrock and Borrower.

7.3 Nonexclusive Remedies. All of Shamrock's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Shamrock at such time or times and in such order of preference as Shamrock in its sole discretion may determine.

## 8. MISCELLANEOUS

8.1 Severability. If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

8.2 Set-Off. Borrower hereby grants to Shamrock a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from Shamrock (or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between Shamrock and Borrower, or any third party acting on Shamrock's behalf (collectively, the "Shamrock Affiliates")) to Borrower and any cash, securities, instruments or other property of Borrower in the possession of Shamrock or any Shamrock Affiliate, whether for safekeeping or otherwise, or in transit to or from Shamrock or any Shamrock Affiliate (regardless of the reason Shamrock or Shamrock Affiliate had received the same or whether Shamrock or Shamrock Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of Borrower to Shamrock or any Shamrock Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of Borrower to Shamrock or any Shamrock Affiliate at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral or adequate collateral is then available to Shamrock or any Shamrock Affiliate.

8.3 Indemnification. Borrower shall indemnify, defend and hold Shamrock harmless of and from any claim brought or threatened against Shamrock by Borrower, any Guarantor, or any other person (as

well as from reasonable attorneys' fees and expenses in connection therewith) on account of Shamrock's relationship with Borrower or any Guarantor (each of which claims may be defended, compromised, settled, or pursued as determined by Shamrock, with counsel of Shamrock's choosing, at the expense of Borrower), except for any claim arising out of the gross negligence or willful misconduct of Shamrock. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Shamrock in favor of Borrower.

8.4 Costs and Expenses. Borrower shall pay to Shamrock any and all costs and expenses (including, without limitation, reasonable attorneys' fees, the allocable cost of Shamrock's internal legal counsel, and disbursements, court costs, litigation and other expenses) incurred or paid by Shamrock in establishing, maintaining, protecting, interpreting, amending or enforcing any of Shamrock's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by Shamrock in preparing the Loan Documents, defending Shamrock's security interest in, title or right to the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Obligations. Shamrock may charge any account of Borrower for all such costs and expenses at any time any may deduct the same from any advance of the proceeds of any Loan.

8.5 Counterparts Execution. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement. A signature or other authentication delivered by fax or electronic image shall suffice as an original for all purposes on this Agreement and all other Loan Documents.

8.6 Complete Agreement. This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes, all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

8.7 Binding Effect of Agreement. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Shamrock shall be entitled to rely thereon) until terminated as to future transactions by written notice from either party to the other party of the termination hereof; provided that any such termination shall not release or affect any Collateral in which Shamrock already has a security interest or any Obligations incurred or rights accrued hereunder prior to the effective date of such notice (as hereinafter defined) of such termination. Notwithstanding any such termination, Shamrock shall have a security interest in all Collateral to secure the payment and performance of Obligations arising after such termination as a result of commitments or undertakings made or entered into by Shamrock prior to such termination. Shamrock may transfer and assign this Agreement and deliver the Collateral to the assignee, who shall thereupon have all of the rights of Shamrock; and Shamrock shall then be relieved and discharged of any responsibility or liability with respect to this Agreement and the Collateral. Borrower may not assign or transfer any of its rights or obligations under this Agreement. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

8.8 Further Assurances. Borrower will from time to time execute and deliver to Shamrock, and take or cause to be taken, all such other or further action as Shamrock may request in order to effect and confirm or vest more securely in Shamrock all rights contemplated by this Agreement and the other Loan Documents or to vest more fully in or assure to Shamrock the security interest in the Collateral granted to Shamrock by this Agreement or to comply with applicable statute or law and to facilitate the collection of the Collateral.

8.9 Amendments and Waivers. This Agreement may be amended and Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if Borrower shall obtain Shamrock's prior written consent to each such amendment, action or omission to act. No delay or omission on the part of Shamrock in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of Shamrock on any future occasion.

8.10 Terms of Agreement. This Agreement shall continue in full force and effect so long as any Obligations or obligation of Borrower to Shamrock shall be outstanding, or Shamrock shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between Borrower and Shamrock and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Shamrock or any of the liabilities, obligations or undertakings of Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between Borrower and Shamrock be construed to limit or otherwise derogate from any of the rights or remedies of Shamrock or any of the liabilities, obligations or undertakings of Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

8.11 Notices. Any notice under or pursuant to this Agreement shall be a signed writing or other authenticated record (within the meaning of Article 9 of the Code). Any such notice shall be deemed duly received and effective (i) if delivered in hand to, or received by, any officer or agent of Borrower or Shamrock, upon such delivery or receipt, or (ii) if mailed by registered or certified mail, return receipt requested, postage prepaid, and properly addressed to Borrower or Shamrock, two (2) business days after being so mailed, or (iii) if sent by overnight mail or delivery service, the business day after being so sent. A party's proper address is that set forth for such party in this Agreement or in the Disclosure Schedule or such address as that party may from time to time hereafter designate by notice to the other party.

8.12 Governing Law. This Agreement shall take effect as a sealed instrument and has been executed or completed and/or is to be performed in Massachusetts, and may be accepted only in Shamrock's principal office in Wenham, Massachusetts, and it and all transactions hereunder or pursuant hereto shall be governed as to interpretation, validity, effect, rights, duties and remedies of the parties hereunder and in all other respects by the domestic laws of The Commonwealth of Massachusetts.

8.13 Reproductions. This Agreement and all documents which have been or may be hereinafter furnished by Borrower to Shamrock may be reproduced by Shamrock by any electronic, photographic, photostatic, microfilm, xerographic, or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business). A signature or other authentication delivered by fax or electronic image shall suffice as an original for all purposes on this Agreement and all other Loan Documents.

8.14 Consent of Shamrock. Whenever Shamrock's consent, approval, acceptance, or other action is required under this Agreement or under any Loan Document, except where Shamrock's decision is expressly stated to be guided by its reasonable judgment or other express standard, Shamrock's decision whether to so consent, approve, accept, or act will be in the sole and exclusive discretion of Shamrock, and Shamrock's decision will be final and conclusive.

8.15 Capital Requirements. If Shamrock shall determine that the adoption of or change in any applicable law, rule, regulation, guideline, directive or request (whether or not having force of law) regarding capital requirements interpretation or administration thereof by any governmental authority, central bank or comparable agency charged with the interpretation or administration thereof, or

compliance by Shamrock or its parent holding company with any of the foregoing imposes or increases a requirement by Shamrock or its holding company to allocate capital resources to any Loans hereunder which has or would have the effect of reducing the return on Shamrock's or its holding company's capital to a level below that which Shamrock or its holding company could have achieved (taking into consideration Shamrock's or its holding company's then existing policies with respect to capital adequacy and assuming full utilization of such entity's capital) but for such adoption, change or compliance, by any amount deemed by Shamrock to be material: (i) Shamrock shall promptly after its determination of such occurrence give notice thereof to Borrower; and (ii) Borrower shall pay to Shamrock as an additional fee from time-to-time on demand such amount as Shamrock certifies to be the amount that will compensate it for such reduction affecting Shamrock for periods beginning thirty (30) days after such notice is given. A certificate of Shamrock claiming compensation under this Section 8.15 shall be conclusive in the absence of manifest error. Such certificate shall set forth the nature of the occurrence- giving rise to such compensation, the additional amount or amounts to be paid to it hereunder and the method by which such amounts were determined. In determining such amounts, Shamrock may use any reasonable averaging and attribution methods.

8.16 Participation. Borrower agrees that Shamrock may assign, transfer or negotiate this Agreement and other Loan Documents and in such event all of the provisions of this Agreement and the Loan Documents so assigned shall inure to the benefit of and may be exercised by or on behalf of the assignee, transferee or successor to Shamrock, and all payments of principal and interest due, and to become due hereunder or under any of the Loan Documents shall not thereafter be subject to any defense, counterclaim or setoff which Borrower or any Guarantor may have against Shamrock. Borrower also agrees that Shamrock may sell participations to one or more banks or other entities in all or any portion of Shamrock's rights hereunder and the Obligations under any of the Loan Documents. Borrower also agrees that Shamrock may at any time pledge all or any portion of its interest and rights hereunder and/or under any of the Loan Documents to any Federal Reserve Banks organized under the Federal Reserve Act, 12 U.S.C. §341 et seq.

8.17 Patriot Act Notice. Shamrock hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (October 26, 2001)), Shamrock is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Shamrock to identify Borrower in accordance with such Act.

## 9. DEFINITIONS

9.1 Certain Terms. The following definitions apply under this Agreement, including on the Terms Schedule attached hereto.

"Affiliate" means any person or entity that, directly or indirectly, controls, is controlled by, or is under common control with Borrower, or is Borrower. For certainty, Kevin Devaney and all entities owned fifty (50%) percent of more, directly or indirectly, by him are Affiliates.

"Agreement" is defined in the introductory paragraph hereof.

"Amount Financed" means, with respect to a Vehicle at any time, the principal amount of the Floorplan Advance made by Shamrock to finance the purchase or other acquisition thereof or otherwise made with respect to such Vehicle, less any curtailment payments made with respect to such Vehicle, if any.

"Borrower" is defined in the introductory paragraph hereof.

"Code" means the Uniform Commercial Code as enacted in The Commonwealth of Massachusetts, as in effect from time to time. "Collateral" is defined in Section 2.1 hereof.

"Controlled Property" is defined in Section 4.14.

"Event of Default" is defined in Section 7 hereof; and "Default" means an Event of Default or any condition or event that upon notice or passage of time, or both, would constitute an Event of Default.

"Financed Vehicle" means a vehicle, the purchase of which by Borrower, has been financed in whole or in part by a Floorplan Advance, or a Vehicle against which Shamrock has made a specific Floorplan Advance. A Vehicle taken in trade as whole or partial consideration for the sale or lease of a Financed Vehicle is a Financed Vehicle, unless and until Shamrock has received in immediately available funds the Amount Financed of the sold or leased Vehicle.

"Floorplan Advances" is defined in Section 1.1(a) hereof, and "Floorplan Advance" means each such floorplan advance.

"Floorplan Limit" is defined in Section 1.1(a) hereof.

"Floorplan Note" is defined in Section 1.2 hereof.

"Guarantor" means each and every person and entity now or hereafter guaranteeing the whole or partial payment or collection of any Obligation.

"Inventory" has the meaning provided in the Code and includes both Financed Vehicles and non-financed Inventory.

"Loan" and "Loans" are defined in Section 1.1(b) hereof.

"Loan Documents" means this Agreement, the Notes, and each other agreement, guaranty, mortgage, security agreement, account control agreement, financing statement, and other instruments and documents in any way relating to any Loan, or relating to any other relationship between the parties now existing or hereafter executed, and all amendments, addenda, and replacements thereto

"Obligation" means the Loans, and all other present and future indebtedness, obligation and liability that Borrower or any Affiliate of Borrower may incur in favor of Shamrock, whether direct or indirect, absolute or contingent, liquidated or unliquidated, whether as principal obligor or as accommodation party, whether due or to become due, of every nature and kind, in principal, interest, fees, costs, expenses and attorneys' fees, including without limitation, obligations under interest rate swap agreements and other capital market agreements, and all other indebtedness, obligations, fees, costs and expenses for which Borrower may be responsible under this Agreement and under each Loan Document.

"Ordinary Course of Business" has the meaning provided in the Code, and includes sales and leases of Vehicle inventory to individuals and business entities at retail, as well as occasional sales and exchanges of Vehicles to or with licensed motor vehicle or motorcycle dealers who finance their Vehicle inventory exclusively with Shamrock, but shall not include sales or exchanges to or with other dealers except with the written consent of Shamrock.

"Shamrock" is defined in the introductory paragraph hereof.

"Used Vehicles" are all Vehicles in Borrower's inventory not classified as a New Vehicle, Demonstrator, or Program Vehicle.

"Vehicle" means any vehicle, including automobiles, trucks, motorcycles, trailers, and motor homes permitted to travel over public ways and subject to titling statutes in the state of Borrower's principal location, and includes titled and untitled vehicles, whether or not registered, vehicle inventory held for sale or lease, for short or long term rental or use, or for use in Borrower's business.

9.2 Additional Definitions; Construction. All terms not otherwise defined in this Agreement have the meanings provided in the Code. In this Agreement, singular words include the plural, and the plural words include the singular.

9.3 Non-Business Day Payments. Any payment under any Loan Document due to Shamrock on a day other than a day when Shamrock is open shall be paid the next business day.

9.4 Terms Schedule. All references to the Terms Schedule herein shall refer to the Terms Schedule attached hereto, as amended from time to time. Shamrock may reasonably amend such Terms Schedule by written notice to Borrower, and any such amendment shall be effective ninety (90) days after the sending of such notice.

## 10. CERTAIN WAIVERS

**10.1 Waivers. Borrower waives notice of intent to accelerate, notice of acceleration, notice of nonpayment, demand, presentment, protest or notice of protest of the Collateral, and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof.**

**10.2 Venue. Borrower irrevocably submits to the exclusive jurisdiction of any Federal or state court sitting in The Commonwealth of Massachusetts, over any suit, action or proceeding arising out of or relating to this Agreement. Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to Borrower's address shown in this Agreement or to such other address that Shamrock regularly corresponds with Borrower and (ii) by serving the same upon Borrower in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Borrower.**

**10.3 JURY WAIVER. BORROWER AND SHAMROCK HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, ALL LOAN DOCUMENTS, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED. BORROWER CERTIFIES THAT NEITHER SHAMROCK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SHAMROCK WOULD NOT IN THE EVENT OF ANY SUCH**

**PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

<end of page; the next page is the signature page>

Borrower and Shamrock hereby agree to the foregoing Loan and Security Agreement, and acknowledge all consents and waivers, including the jury trial waiver. BORROWER SPECIFICALLY ACKNOWLEDGES THAT SHAMROCK MAY DEMAND PAYMENT OF THE LOAN AND/OR DECLINE TO MAKE ADVANCES AT ANY TIME FOR ANY REASON OR NO REASON.

Executed as an instrument under seal as of the date first written above.

**BORROWER**

J&K Acquisitions And Holdings INC

By: Kristin M Allard
Its President

By: Jason Tanner
Its Vice President

Shamrock Finance LLC

By: Kevin Devaney
Manager

The undersigned guarantors join in the foregoing, and specifically acknowledges, reaffirms and ratifies all obligations and liabilities under, and agree to continue to be bound by all the terms and conditions of, his guaranty.

By: ____________________
Name: Kristin M Allard, Individually

By: ____________________
Name: Jason Tanner, Individually

("Guarantors") (Jointly and Severally)

**DISCLOSURE SCHEDULE**

3.1 Exact Name and all prior names of the Borrower:

Prior Names: Organization Number:

Federal Tax Identification Number:

Mergers, Etc.

Subsidiaries and Investments:

3.2 Licenses:

3.3 Other Liens and Equipment Leases and other Leases, if any:

3.4 Primary Place of Business and Collateral Locations, including storage lots:

______________________________

Landlord / Property Owner:

Lease or other terms of occupancy:

3.5 Pending or Threatened Litigation:

3.6 Borrower's Bank Accounts

All curtailment payments are due on the 15th day of each month, and may be paid via auto-debit from Borrower's principal checking account with Shamrock.

(b) Payment upon Sale:

Cash sales/swaps: Full payment within three (3) business days of sale or swap.

Contract sales: Full payment at the sooner of one (1) business day after receipt funds, or ten (10) business days after sale.

Stolen Vehicles: Proof of an insurance claim and a copy of the police report required; payment upon the earlier of the receipt of funds or sixty (60) days.

2.1 Guarantor(s)

Name: [signature]
Address: 11 Dexter St, Prov 02909

Phone: 401-489-4281
E-mail: swanseaautoexchange@gmail.com

__________________________

__________________________

__________________________

Name: Jason Tamer
Address: 11 Hudson St, Prov 02909.

Phone: 401-300-2513
E-mail: QualityCARS220@GmAil.com

**TERMS SCHEDULE TO**
**LOAN AND SECURITY AGREEMENT DATED as of July 27, 2016**

"Borrower": See attached Disclosure Schedule.

1.1 Allocation of Floorplan Limit: Sublimits The Floorplan Limit shall be initially allocated as set forth in a separate writing from Shamrock to Borrower dated on or about the date hereof, and shall at all times be subject to change in Shamrock's discretion, upon notice to the applicable Borrower(s). Shamrock reserves the right to set further sublimit by Approved Manufacturer, or other Vehicle source and by additional Vehicle type or classification, by notice to Borrower.

Intended Advance Rates, subject to change in Shamrock's discretion:

New Vehicles, including New Vehicles to be used as Demonstrators - 100% of the purchase price for such vehicle as stated in the manufacturer's invoice, or, if less, Borrower's actual acquisition cost.

Program Vehicles, including Program Vehicles to be used as Demonstrators - Borrower's actual acquisition cost or, if less, manufacturer's invoice.

Used Vehicles -the lesser of (i) the cost of such vehicle to Borrower or (ii) One Hundred Percent (100%) of the published wholesale value for such vehicle, as set forth in the then current Global Market Report") as published by Autoniq, LLC current auction wholesale prices, assuming good condition, and without regard to add-on equipment.

Floorplan Advances shall be used solely for financing Vehicles.

1.2 Curtailment and Payments.

The unpaid balance of each Floorplan Advance shall be due and payable upon the sale or lease of the subject vehicle or upon Shamrock's demand or earlier acceleration upon an Event of Default. Each Floorplan Advance shall be subject to the following mandatory payments and prepayments:

Curtailments:

(b) As to any Floorplan Advance for a Used Vehicle,

ten percent (10%) of the original Amount Financed shall be due and payable each month beginning one hundred eighty (180) days after the date of the original Floorplan Advance, until two hundred seventy (270) days after the date of the original advance, when the (remaining) Amount Financed shall be paid in full

**Exhibit B**

**UNLIMITED GUARANTY**

TO: **Shamrock Finance LLC** (including its successors and assigns, "Shamrock")

RE: **J&K Acquisitions and Holdings INC.** (the "Borrower")

DATE: September 1, 2016

To induce you, Shamrock Finance LLC ("Shamrock"), to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by you to or for the account of the Borrower, the undersigned (the "Guarantors") absolutely and unconditionally guarantee the full and punctual payment to you of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to you from the Borrower, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by you including attorneys' fees in connection with such obligations, this Guaranty and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with you. This is a guaranty of payment and not collection.

Shamrock may enforce this Guaranty on multiple occasions, each time without the necessity of joinder of any other guarantors. This Guaranty shall remain in full force and effect until all obligations of Borrower are unconditionally paid in full.

Guarantors also agree:

(1) to indemnify and hold you and your directors, officers, employees, agents and attorneys harmless against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of Shamrock, its officers, directors, employees or agents;

(2) that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to Guarantors;

(3) that the liability of Guarantors hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring you first to resort to any other right, remedy or security;

(4) that Guarantors shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to you;

(5) that the liability of Guarantors is unlimited and joint and several with the liabilities of any other guarantors;

(6) that if the Borrower or Guarantors or any other Guarantors should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or Guarantors, or any other Guarantors of the obligations guaranteed hereby, any and all obligations of Guarantors shall be immediately due and payable without notice;

(7) that your books and records showing the account between you and the Borrower shall be admissible in any action or proceeding, shall be binding upon Guarantors for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8) that this Guaranty is, as to Guarantors, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(9) that this Guaranty may be terminated as to Guarantors only by giving you sixty (60) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to Guarantors only at the expiration of said sixty (60) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, and also extensions of credit made pursuant to a commitment previously made by you;

(10) that the death of Guarantors shall not affect the termination of this Guaranty as to Guarantors providing, that in any event within sixty (60) days after the death of Guarantors, Borrower or any surviving Guarantors shall provide to Shamrock evidence that the estate of Guarantors confirms its obligations to Shamrock under this Guaranty;

(11) that termination of any guaranty of the obligations guaranteed hereby by any other Guarantors shall not affect the continuing liability hereunder of Guarantors;

(12) that nothing shall discharge or satisfy the liability of Guarantors hereunder except the full indefeasible payment and performance of all of the Borrowers' debts and obligations to you with interest and costs of collection;

(13) that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the Obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, Guarantors or any other person obligated to you consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(14) that any and all present and future debts and obligations of the Borrower to Guarantors are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to you;

(15) Guarantors hereby grants to Shamrock a continuing lien and security interest in all deposits or other sums at any time credited by or due from Shamrock (or any of its banking or lending affiliates, any bank acting as a participant under any loan arrangement between

Shamrock and Guarantors or the Borrower or any third party acting on Shamrock's behalf (collectively, the "Shamrock Affiliates") to Guarantors and any property of Guarantors at any time in Shamrock's or any Shamrock Affiliate's possession whether for safekeeping or otherwise, or in transit to or from Shamrock or any Shamrock Affiliate (regardless of the reason Shamrock or Shamrock Affiliate had received the same or whether Shamrock or Shamrock Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Shamrock or any Shamrock Affiliate;

(16) that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by you to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer of conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or Guarantors, or to the creditors of Guarantors or any representative of Guarantors or representative of the creditors of Guarantors upon the insolvency, bankruptcy or reorganization of Guarantors or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of Guarantors, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to Guarantors or to the Borrower, or any other apparent termination of Guarantors' obligations hereunder;

(17) that any rights and remedies available to you under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to you;

(18) that your delay or omission in exercising any of your rights and remedies shall not constitute a waiver of these rights and remedies, nor shall your waiver of any right or remedy operate as a waiver of any other right or remedy available to you. Your waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(19) that this Guaranty incorporates all discussions and negotiations between you and Guarantors concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by your duly authorized officer;

(20) that this Guaranty and all documents which have been or may be hereinafter furnished by Guarantors to you may be reproduced by you by any photographic, electronic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business); and

(21) that Guarantors shall deliver to you (i) on or before April 30 of each year and upon request therefor, signed personal financial statements addressed to you in form satisfactory to you, and (ii) on or before April 30 of each year, or such other date approved by Shamrock, but in no event later than 15 days after filing, a signed copy of Guarantors' filed federal tax

return for the prior year, and Guarantors represents and warrants the accuracy of any information contained in any of the foregoing and hereby agrees not to encumber any assets listed on any financial statements without your prior consent.

Guarantors waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which Guarantors might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any party may have the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of Borrower or any other party may have the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type, and any right to exoneration or marshalling. To the extent that he lawfully may, Guarantors hereby further agrees not to invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of Shamrock's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that he lawfully may do so, Guarantors hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, Shamrock shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantors will from time to time execute and deliver to Shamrock, and take or cause to be taken, all such other further action as Shamrock may request in order to effect and confirm or vest more securely in Shamrock all the rights contemplated in this Guaranty or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the internal laws of The Commonwealth of Massachusetts, shall be binding upon the heirs, executors, administrators, successors and assigns of Guarantors and shall inure to the benefit of your successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

Guarantors irrevocably submits to the exclusive jurisdiction of any Federal or state court sitting in Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantors irrevocably waives, to the fullest extent he may effectively do so under applicable law, any objection he may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantors hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to Guarantors' address shown below or as notified to Shamrock and (ii) by overnight mail, and (iii) by serving the same upon Guarantors in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Guarantors.

This Guaranty is secured by, and entitled to the benefit, inter alia, of any and all collateral previously or hereafter delivered by Guarantors to Shamrock.

[End of page; the next page is the signature page]

GUARANTORS AND SHAMROCK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTORS CERTIFIES THAT NEITHER SHAMROCK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SHAMROCK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as an instrument under seal as of the date first written above.

**GUARANTORS**

Kristin M Allard, individually

Jason Tanner, individually

**[Signature Page to Unlimited Guaranty]**

# Exhibit C

MA SOC  Filing Number: 201630614870  Date: 8/17/2016 10:10:00 AM

# UCC-1 Form

## FILER INFORMATION

*Full name:* SHAMROCK FINANCE LLC

*Email Contact at Filer:* SHAMROCKFINANCE@YAHOO.COM

## SEND ACKNOWLEDGEMENT TO

*Contact name:*

*Mailing Address:* 116 TOPSFIELD RD

*City, State Zip Country:* WENHAM, MA 01984 USA

## DEBTOR INFORMATION

*Org. Name:* J&K ACQUISITIONS AND HOLDINGS INC

*Mailing Address:* 1405 GAR HIGHWAY

*City, State Zip Country:* SWANSEA, MA 02777 USA

*Org. Name:* SWANSEA AUTO EXCHANGE

*Mailing Address:* 1405 GAR HIGHWAY

*City, State Zip Country:* SWANSEA, MA 02777 USA

*Last Name (i.e. Family Name or Surname):* ALLARD *First Name:* KRISTIN *Middle Name:* M

*Mailing Address:* 11 HUDSON ST

*City, State Zip Country:* PROVIDENCE, RI 02909 USA

*Last Name (i.e. Family Name or Surname):* TANNER *First Name:* JASON

*Mailing Address:* 11 HUDSON ST

*City, State Zip Country:* PROVIDENCE, RI 02909 USA

## SECURED PARTY INFORMATION

*Org. Name:* SHAMROCK FINANCE LLC

*Mailing Address:* 116 TOPSFIELD RD

*City, State Zip Country:* WENHAM, MA 01984 USA

## TRANSACTION TYPE: STANDARD

## COLLATERAL

GRANT OF SECURITY INTEREST. IN CONSIDERATION HEREOF, BORROWER HEREBY GRANTS TO SHAMROCK A SECURITY INTEREST IN, A LIEN ON, AND PLEDGE AND ASSIGNMENT OF ALL OF ITS NOW OWNED AND HEREAFTER ACQUIRED TANGIBLE AND INTANGIBLE PERSONAL PROPERTY, TO WIT: ALL PRESENT AND FUTURE PROPERTY AND RIGHTS OF BORROWER IN AND TO: (A) ALL INVENTORY, INCLUDING WITHOUT LIMITATION, ALL NEW AND USED MOTOR VEHICLE, MOTORCYCLE, ALL-TERRAIN VEHICLE, SCOOTER, POWER SPORT VEHICLE AND PARTS INVENTORY, AND FURTHER INCLUDING WITHOUT LIMITATION, ALL INVENTORY ON ORDER, BUT NOT YET DELIVERED TO BORROWER, AND ALL CONSIGNED GOODS, AND ALL MOTOR VEHICLES AND OTHER GOODS HELD FOR SHORT OR LONG TERM RENTAL OR LEASE AND FOR USE AS SO-CALLED DEMONSTRATORS AND SERVICE LOANERS; (B) ALL ACCOUNTS, CONTACT RIGHTS, CHATTEL PAPER, ELECTRONIC CHATTEL PAPER, INSTRUMENTS, DOCUMENTS, PROMISSORY NOTES, AND SUPPORTING OBLIGATIONS; AND ALL RIGHT AND BENEFITS UNDER ANY AGREEMENT FOR AN INTEREST RATE SWAP, FORWARD RATE, CAP, FLOOR, OR COLLAR, OR THE LIKE, TO THE FULL EXTENT ASSIGNABLE; (C) ALL PAYMENT INTANGIBLES AND ALL RIGHTS TO RECEIVE PAYMENT, CREDITS, AND OTHER COMPENSATION, INCLUDING WITHOUT LIMITATION, SO CALLED "FACTORY CREDITS" AND HOLDBACKS, INCENTIVE PAYMENTS, STOCK REBATES, ALLOWANCES OR RESERVES FROM ANY (OTHER) MANUFACTURER, DISTRIBUTOR, OR SUPPLIER OF MOTOR VEHICLES OR MOTORCYCLES, OR FROM ANY OF THEIR SUBSIDIARIES OR AFFILIATES OR ANY OTHER BANKS OR LENDERS; (D) ALL GENERAL INTANGIBLES, FRANCHISE RIGHTS AND RIGHTS UNDER SALES AND SERVICE AGREEMENTS, BOOKS,

RECORDS, FILES, COMPUTER DISKS, SOFTWARE, INVOLVING OR EMANATING FROM BORROWER'S BUSINESS OR ASSETS; (E) ALL INVESTMENT PROPERTY; (F) ALL PAYMENTS AND CREDITS AND ACCOUNTS THAT SHAMROCK MAY OWE TO BORROWER; AND ALL FUNDS OF BORROWER THAT SHAMROCK MAY HAVE TO RETAIN IN ITS POSSESSION, WHETHER IN THE FORM OF CASH COLLATERAL, RESERVE, CONTINGENCY, ESCROW ACCOUNTS TO THE EXTENT OF BORROWER'S INTERESTED, DEPOSIT ACCOUNTS, OPERATING ACCOUNTS, OR OTHERWISE; (G) ALL DEPOSIT AND OTHER ACCOUNTS IN AND WITH ALL OTHER BANKS AND DEPOSITORIES; (H) ALL EQUIPMENT INCLUDING WITHOUT LIMITATION, ALL FURNITURE, MACHINERY, TOOLS; (I) ALL FIXTURES; AND (J) ALL ADDITIONS, SUBSTITUTIONS, REPLACEMENTS, ACCESSORIES, ATTACHMENTS AND ACCESSIONS TO, AND ALL PROCEEDS OF THE FOREGOING AND OF PROCEEDS, INCLUDING ALL MOTOR VEHICLES, MOTORCYCLES AND OTHER GOODS RECEIVED IN TRADE, CLAIMS, AND TORT RECOVERIES, INSURANCE PROCEEDS, REFUNDS OF INSURANCE PREMIUMS, PROCEEDS DERIVED FROM BORROWER'S SALE OR ASSIGNMENT OF CHATTEL PAPER, AND ALL CASH AND OTHER FUNDS HELD IN ALL DEPOSIT ACCOUNTS IN WHICH PROCEEDS MAY BE DEPOSITED (ALL OF THE FOREGOING, THE "COLLATERAL"). THE SECURITY INTEREST GRANTED BY THIS AGREEMENT IS GIVEN TO AND SHALL BE HELD BY SHAMROCK AS SECURITY FOR THE PAYMENT AND PERFORMANCE OF ALL OBLIGATIONS, INCLUDING, WITHOUT LIMITATION, ALL AMOUNTS OUTSTANDING PURSUANT TO THE LOAN DOCUMENTS AND ALL AMOUNTS DUE UNDER ANY GUARANTY PREVIOUSLY, CONCURRENTLY, OR HEREAFTER EXECUTED BY BORROWER, AND SHALL CONTINUE EVEN IF AT ANY TIME THERE SHALL BE NO AMOUNTS OUTSTANDING, UNTIL PAYMENT AND PERFORMANCE OF ALL OBLIGATIONS OR UNTIL TERMINATED IN A WRITING SIGNED BY AN AUTHORIZED OFFICER OF SHAMROCK.

MA SOC Filing Number: 201632951630 Date: 12/2/2016 4:24:00 PM

# UCC-3 Form - AMENDMENT

AMENDMENT ACTION - DEBTOR CHANGE

*Original File Number:* 201630614870

---

**FILER INFORMATION**

*Full name:* SHAMROCK FINANCE LLC

*Email Contact at Filer:* SHAMROCKFINANCE@YAHOO.COM

**SEND ACKNOWLEDGEMENT TO**

*Contact name:* SHAMROCK FINANCE LLC

*Mailing Address:* 116 TOPSFIELD RD

*City, State Zip Country:* WENHAM, MA 01984

---

**CURRENT RECORD INFORMATION**

*Org. Name:* J&K ACQUISITIONS AND HOLDINGS INC

---

**DEBTOR INFORMATION**

*Org. Name:* J&K ACQUSITIONS AND HOLDINGS INC

*Mailing Address:* 1405 GAR HIGHWAY

*City, State Zip Country:* SWANSEA, MA 02777 USA

---

NAME OF THE SECURED PARTY OF RECORD AUTHORIZING THE AMENDMENT: SHAMROCK FINANCE LLC

---

# Exhibit D

J&K Acquisitions
104 GAR Highway
Swansea, MA 02777

| Vehicle | VIN | Floorplan Amount | Repo/Tow/Storage | Auction Fee | Other Fees | Sale Price | Balance Owed | NOTES: |
|---|---|---|---|---|---|---|---|---|
| 2004 Ford F-150 | 1FTPW14534KD36101 | $ 5,220.00 | $ 75.00 | $ 150.00 | $ 16.00 | $ 2,800.00 | $ 2,661.00 | |
| 2007 Cadillac Escalade | 1GYFK66837R311037 | $ 12,200.00 | $ 75.00 | $ 150.00 | $ 8.00 | $ 9,900.00 | $ 2,533.00 | |
| 2003 Ford F-250 | 1FTNX21P33EC61395 | $ 7,770.00 | $ 75.00 | $ 150.00 | | $ 6,400.00 | $ 1,595.00 | |
| 2004 Ford F-150 | 1FTPX14574NA54491 | $ 6,760.00 | | | | | $ 6,760.00 | SOLD OUT OF TRUST |
| 2011 GMC Sierra 1500 | 3GTP2VE33BG347068 | $ 16,620.00 | $ 75.00 | $ 150.00 | $ 8.00 | $ 13,800.00 | $ 3,035.00 | |
| 2005 Chevy Colorado | 1GCDT136958153807 | $ 5,735.00 | $ 75.00 | $ 150.00 | | $ 3,500.00 | $ 2,460.00 | |
| 2004 Ford F-150 | 1FTPW14514KC60751 | $ 7,895.00 | $ 75.00 | $ 150.00 | $ 8.00 | $ 5,200.00 | $ 2,928.00 | |
| 2011 GMC Sierra 1500 | 1GTR2VE30BZ185893 | $ 15,455.00 | $ 75.00 | $ 150.00 | $ 8.00 | $ 11,000.00 | $ 4,688.00 | |
| 2002 Ford Ranger | 1FTZR45E62TA63713 | $ 3,860.00 | $ 75.00 | $ 150.00 | $ 383.00 | $ 3,000.00 | $ 1,468.00 | |
| 2003 Dodge Ram Pickup | 1D7HU16D73J601482 | $ 3,910.00 | $ 75.00 | $ 150.00 | | $ 2,600.00 | $ 1,535.00 | |
| 2006 Ford F-250 | 1FTSX21P16EA57606 | $ 5,870.00 | | | | | $ 5,870.00 | SOLD OUT OF TRUST |
| 2009 Jeep Wrangler | 1J4GA59139L728292 | $ 14,710.00 | $ 75.00 | $ 150.00 | | $ 13,600.00 | $ 1,335.00 | |
| 2009 Ford F-150 | 1FTPW14VX9FB45985 | $ 17,020.00 | $ 75.00 | $ 150.00 | | $ 13,050.00 | $ 4,195.00 | |
| 2007 Acura MDX | 2HNYD28587H506713 | $ 5,255.00 | $ 75.00 | $ 150.00 | | $ 7,300.00 | $ (1,820.00) | |
| 2006 Dodge Ram Pickup | 3D7KS19D76G154245 | $ 10,625.00 | | $ 245.00 | $ 100.00 | $ 9,555.00 | $ 1,415.00 | |
| 2008 Ford F-250 | 1FTSW21R18ED24363 | $ 15,445.00 | | | | | $ 15,445.00 | SOLD OUT OF TRUST |
| 2009 BMW X5 | 5UXFE83559L169555 | $ 12,685.00 | $ 1,190.00 | $ 150.00 | $ 262.50 | $ 5,500.00 | $ 8,262.50 | |
| 2010 Dodge Ram Pickup | 1D7RV1GT8AS221887 | $ 13,910.00 | | $ 260.00 | $ 100.00 | $ 10,400.00 | $ 3,870.00 | |
| 2011 Hyundai Sonata | 5NPEC4AC6BH055930 | $ 5,970.00 | | | | | $ 5,970.00 | SOLD OUT OF TRUST |
| 2004 Ford F-150 | 1FTPX14574NB35619 | $ 4,400.00 | | $ 190.00 | $ 100.00 | $ 4,100.00 | $ 590.00 | |
| 2004 Dodge Ram Pickup | 3D7KU28D94G175225 | $ 7,970.00 | | | | | $ 7,970.00 | SOLD OUT OF TRUST |
| 2004 GMC Canyon | 1GTCS196848100990 | $ 4,285.00 | $ 75.00 | $ 150.00 | | $ 1,800.00 | $ 2,710.00 | |
| 2012 Nissan Xterra | 5n1an0nw8cc504667 | $ 9,000.00 | $ 600.00 | $ 150.00 | | $ 3,100.00 | $ 6,650.00 | |
| | | | | | | | | |
| Proceeds account to | | | | | | | $ 92,125.50 | |
| Senior Lien Holder: | | | | | | | $ 48,785.00 | |
| | | | | | | **TOTAL:** | **$ 140,910.50** | |

# **Exhibit E**

Doc No: 00161933
Book:11612 Page: 232

# *QUITCLAIM DEED*

*No Title Examination Requested*
*No Title Policy Issued*

I, **KRISTIN M. ALLARD a/k/a KRISTEN M. ALLARD**, presently residing in Providence, Rhode Island, as Sole Owner of the property herein described as "Exhibit A," which is attached and incorporated, grant to **THERESA PRIMO**, presently a resident of Providence, Rhode Island, as Sole Owner, of my interest in the property described hereinbelow for one dollar ($1.00) consideration paid

with **QUIT CLAIM COVENANTS**.

See Legal Description marked "Exhibit A" attached and made a part hereof.

Subject to all prior encumbrances and taxes assessed as of December 31, 2015.

Consideration for this conveyance is such that no documentary stamps are required nor any withholding;

The undersigned hereby certifies that this transfer is exempt from the smoke detector and carbon monoxide detector law as provided in Section 23-28.35-1 et seq. since this transfer is not the result of a sale.

Witness my hand this 9th day of January, 2017

[signature]
KRISTIN M. ALLARD a/k/a KRISTEN M. ALLARD

**STATE OF RHODE ISLAND**
**COUNTY OF PROVIDENCE**

In **PROVIDENCE** on the 9th day of January, 2017 before me personally appeared **KRISTIN M. ALLARD a/k/a KRISTEN M. ALLARD**, to me known and known by me to be the party executing the foregoing instrument, and she acknowledged said Quitclaim Deed by her executed to be her free act and deed.

[signature]
**NOTARY** Dawn F. Oliver
**MCE:** 9/30/2017

Property Address:
11 Hudson Street
Providence RI 02909
AP. 36 Lot. 382

Grantee's Address:
11 Hudson Street
Providence RI 02909

Doc No: 00161933
Book: 11612 Page: 233

"EXHIBIT A"

That certain tract or parcel of land with all the buildings and improvements thereon, situated on the northerly side of Hudson Street in the City and County of Providence, State of Rhode Island, bounded and described as follows" Beginning at a point in the northerly line of Hudson Street seventy-seven and 10/100 (77.10) feet, more or less, westerly from the westerly line of Parade Street, said point of beginning being at the south-westerly corner of land now or lately of Emma Lancellotti and running thence westerly bounding northerly on said Hudson Street a distance of fifty-seven and 40/100 (57.40) feet to land now or lately of John Degaltas et ux, thence turning an interior angle of 90° and running northerly bounding westerly on said Degaltas land a distance of fifty (50) feet to land now or lately of Anthony Viola Jr. et ux; thence turning an interior angle of 90° and running easterly bounding northerly on said Viola land a distance of fifty-seven and 40/100 (57.40) feet to said Lancellotti land; thence turning an interior angle of 90° and running southerly bounding easterly on said Lancellotti land fifty (50) feet to the point or place of beginning, said last described line forming an interior angle of 90° with the line first herein described

Being the same deed transferred from Kristen M. Allard, only surviving heir at law of Paula Maureen Allard to Ann Marie Fuscone dated December 27, 1995 recorded in the City of Providence Records of Deeds, Book 3253 at Page 046 on December 28, 1995.

RECEIVED:

Providence
Received for Record
Jan [illegible] 2017 at [illegible]
Document Num: 00161933
John A Murphy
Recorder of Deeds

Property Address
11 Hudson Street
Providence RI 02909
AP 36 Lot 302

Grantee's Address:
11 Hudson Street
Providence RI 02909